[Childress v. The State.]

# Childress v. The State.

### Indictment for Arson.

| | |
|---|---|
| 86 | 77 |
| 97 | 63 |
| 86 | 77 |
| 123 | 10 |
| 86 | 77 |
| 129 | 99 |

1. *Sufficiency of indictment.*—An indictment which alleges that the defendant "willfully set fire to or burned a house used as a prison, which was at the time occupied by Alfred Phillips, who was lodged therein, and the ownership of which is unknown to the grand jury," contains a sufficient charge of arson in the first degree (Code, § 3780), although the words *used as a prison* may not be the synonym of *prison*, and although it is not averred that *Alfred Phillips* was a human being.

2. *Absent witnesses; compulsory process for; application for continuance.*—In a criminal case, the defendant is entitled, as matter of right, to compulsory process against his absent witnesses (Const. Ala., Art. 1, § 7); but, when his witnesses fail to attend in obedience to a subpœna, and he does not ask an attachment against them, he can not complain that the court puts him on a showing as to their testimony, and, the facts stated being admitted by the prosecution, requires the trial to proceed.

3. *Averment and proof of fact unknown to grand jury.*—When the indictment alleges a fact to be unknown to the grand jury (Code, § 4877), as the ownership of the house alleged to have been burned, the prosecution is not bound to prove that the fact was unknown to them; nor is the defendant entitled to an acquittal, because evidence of the ownership is adduced before the petit jury.

4. *Charge as to weight of defendant's own declarations.*—The defendant's own declarations, partly criminating, and partly exculpatory, when offered as evidence against him, should be received as a whole, but the jury are not bound to give equal credence to every part; and a charge requested, instructing the jury that such declarations "are evidence in the case, to be considered by them just as any other evidence," is properly refused, as misleading, and invasive of the province of the jury.

5. *Charge as to sufficiency of proof relating to use and identity of building burned.*—The building burned being described in the indictment as "a house used as a prison, which was at the time occupied by Alfred Phillips, who was lodged therein," and there being no question as to its identity, it is not necessary to a conviction that the prosecution shall prove, beyond a reasonable doubt, that the house was at the time used for that particular purpose.

6. *Presumption as to continuance of life; charge as to sufficiency of proof.*—Under an indictment for the arson of a building used at the time as a prison, and in which a prisoner was burned up with it, who was put into it only a few hours before, the State is not bound to prove that he was alive at the time of the burning, the presumption being in favor of the continuance of life during that period.

7. *Conviction on testimony of accomplice.*—By statutory provision, a conviction of felony can not be had on the uncorroborated testimony of an accomplice (Code, § 4476); but this principle can not be invoked by the defendant, unless the jury reasonably believe that the witness was an accomplice; nor even then, when the record shows that his testimony was abundantly corroborated.

8. *Argument of counsel to jury.*—In argument to the jury, counsel

for the prosecution may urge a fearless and unflinching administration of the criminal law, commenting on the evidence, its tendencies and inferences, making no statement as of fact which is not supported by any evidence, and avoiding all gross and unwarranted abuse and appeals to prejudice; and replying to counsel for the defense, who had referred to several published cases of circumstantial evidence, and to two unpublished cases which had occurred in the neighborhood, does not exceed the limits of legitimate argument, in telling the jury that "they must decide the case according to the law and the evidence, and not allow these sensational, dime-novel stories to have any weight in making up their verdict—that counsel referred to these remarkable case in order to frighten the jury out of doing their duty."

FROM the Circuit Court of Madison.

Tried before the Hon. HENRY C. SPEAKE.

The defendant in this case, Richard Childress, was indicted for arson in setting fire to a "house used as a prison, which was at the time occupied by Alfred Phillips, who was lodged therein, and the ownership of which is unknown to the grand jury." He demurred to the indictment, (1) "because it does not allege that the structure was in fact a prison," (2) "because it fails to allege that there was a human being in the structure at the time it was burned," and (3) "because it fails to allege that Alfred Phillips was a person." The court overruled the demurrer, and the defendant then pleaded not guilty; was convicted of arson in the first degree, and sentenced to the penitentiary for the term of twenty years. When the case was called for trial, the defendant stated to the court that he was not ready, on account of the absence of several witnesses whose testimony was material to his defense, whose names were stated, and who had been subpœnaed as witnesses for the defense. The court required him to "put in writing what he expected to prove by said witnesses; to which he objected, because he had not had compulsory processes for obtaining witnesses in his favor;" and he showed to the court, in support of his objection, that he had been confined in jail ever since his arrest, that subpœnas had been duly issued for his witnesses, but no attachment, or other process, had been issued to compel their atttendance. The court overruled the objection, and required him to put in writing what he expected to prove by said witnesses, to which he excepted; and having then put in writing what he expected to prove by them, which the State admitted, the court compelled the defendant to go to trial; to which action of the court the defendant excepted." The State then asked for an attachment against the defendant's said witnesses, which was granted;

[Childress v. The State.]

and the witnesses having been afterwards brought in during the trial, they were put under the rule, and were examined.

The evidence adduced on the trial, as set out in the bill of exceptions, was very conflicting in many particulars, but a full statement of it is not necessary to an understanding of the points decided by this court. The house was burned on the Saturday night before Christmas, 1887. It had been erected by the town authorities of "Gurley's," for use as a calaboose, and was so used until within a few weeks before the burning, when the property was bought by one W. T. Bennett, who forbade its further use by the town authorities, and used it as a "corn-crib to put feed in for his horses;" but he gave permission, as he testified, to Squire Lewis, a justice of the peace, "to put his prisoners in there, if he wanted to, as they had no where else to put them." Alfred Phillips seems to have been confined in the house on the night of the burning, under a commitment by said justice of the peace, though the evidence as to that fact is not clearly stated; and he was burned up with the house, his skeleton and identifying remains being found next morning in the ruins. The defendant was in the employment of said Bennett, as the latter testified, "as a driver, and was in the habit of getting feed out of the house for his stock, and had a right to go into the house for that purpose." Said Bennett, being examined as a witness for the State, testified that, on the night of the burning, "he went to the house about eleven o'clock, which was before it was burned, and found the door broken open, and old man Phillips sitting in the door; that Phillips asked him to let him stay there all night, to which witness agreed; that Phillips then went into the house, and witness closed the door, and put a bar against it;" and that when the alarm of fire was given, within an hour afterwards, he went back to the place, "and found the door just as he had left it, propped with a bar, and closed." George Foote, a witness for the State, testified that, on the night of the burning, he was very drunk, having been drinking heavily for several days, and had gone to sleep on the ground in the rear of the bar-room; that he was awakened by the cold in the middle of the night, and started out to find a place where he could sleep; that he was stopped by two men, whom he recognized as the defendant and one Seward, who told him that they were going to burn the calaboose, and took him along with them, holding their weapons drawn on him, and threatening that they would kill

him, if he did not say that Phillips burned the house; that he went with them under this compulsion, saw the defendant set fire to "the fodder and shavings in the house" with a lighted match, "and held out his coat to keep off the wind after it was set on fire;" and that he never saw Phillips, or his body, lying in the house. The testimony of this witness was discredited on some material points, and corroborated on other points. The defendant, testifying in his behalf, stated that, at the time Phillips was committed to the calaboose, he had interceded in his behalf," and offered to go to the calaboose in his stead; that he went to the calaboose that night, between nine and ten o'clock, broke it open, and let out Phillips and Seward, and told *him* ( ? ) to go home to his wife."

The defendant requested the following (with other) charges in writing to the jury: (1.) "If the jury believe from the evidence that the building burned was at the time the property of W. T. Bennett, and under his use and control as a corn-crib, they must acquit the defendant." (2.) "If the jury believe that the State has failed to prove that the ownership of the house burned was unknown to the grand jury, they must acquit the defendant." (3.) "All the statements made by the defendant, declaring that he was innocent of the charge of burning the house, but admitting that he broke open the door, which statements were brought out by the State on examination of its witnesses, are evidence in the case, to be considered by the jury just as any other evidence in the case." (4.) "Before the jury can convict, the State must prove beyond a reasonable doubt that the house burned was used as a prison, and it is not enough if the proof shows that it was used as a corn-crib, and that Bennett had told Squire Lewis he might put prisoners in it." (5.) "It is not incumbent on the defendant to prove that Phillips was not alive when the house was burned, but the State must prove, beyond a reasonable doubt, that he was alive at the time, before the jury can convict the defendant as charged in the indictment." (6.) "If the jury believe from the evidence that Foote was an accomplice in the crime, they can not convict the defendant on his testimony, unless it is corroborated by other testimony." (7.) "If the jury believe from the evidence that the house burned was at the time notoriously used as a corn-crib, and that the defendant had free access thereto, by permission of the owner, at all times, for the purpose of feeding the owner's stock, of which the

[Childress v. The State.]

defendant had charge at the time: then they must find the defendant not guilty." The court refused each of these charges, and the defendant excepted to their refusal.

In his statement to the jury, the defendant said that, after breaking open the door of the house on the night of the burning, and letting out Phillips and Seward, he started with Seward towards the house of Bettie Watkins, where they proposed to spend the night; that on the route, while passing the house of one Bob Bright, "he climbed a tree, got a chicken, and killed it; that he pulled out some of the feathers, and scattered them on the ground, and told Seward that he would see Bright the next day and pay him for the chicken." In his argument to the jury, the solicitor said: "On the night of this burning, the defendant, 'flown with insolence and wine,' was just in the condition to violate the law, and to commit any deeds of violence and devilment." The defendant objected to these remarks, "but the court said nothing, and did not take any action in regard thereto; and the defendant excepted." The solicitor, continuing, said: "He stole a chicken that night;" but, the defendant objecting, he added: "I take it back; he took the chicken, on his own statement, without the owner's consent." The defendant still objecting, the solicitor said: "Well, anyhow, he got that chicken." The bill of exceptions adds: "The court still said nothing, and did not withdraw any of these remarks from the jury, nor instruct the jury not to consider them; and the defendant excepted."

"In his argument to the jury, the defendant's counsel read to them, without objection by the court, several cases reported in *Phillips' Famous Cases of Circumstantial Evidence*, and referred to the fact that three men were hung a few years since in Jackson county for a similar offense, and, after they were hung, it was currently reported in the newspapers that they were not guilty; and also the case of Cavanaugh, Townsend and others, who were tried in this county for the murder of Freeman, and Cavanaugh was discharged, the proof against him being circumstantial. In the concluding argument to the jury, the counsel who was assisting the solicitor, referring to these cases, said: 'Gentlemen, you are to decide this case according to the law and the evidence, and are not to allow these sensational, dime-novel stories to have any weight with you in making up your verdict. The defendant's counsel referred to these remarkable cases in order to frighten you out of doing your duty.'

6

[Childress v. The State.]

The defendant objected to these remarks, but the court said nothing—did not withdraw said remarks from the jury, nor instruct them not to consider the same; and the defendant excepted." The court afterwards instructed the jury, *ex mero motu*, "that they must look to the testimony as given by the witnesses, and must not look to the statements of attorneys for the facts, unless supported by the testimony of witnesses."

O. R. HUNDLEY, for the appellant.

THOS. N. McCLELLAN, Attorney-General, for the State.

CLOPTON, J.—The indictment charges, that the accused "willfully set fire to, or burned a house used as a prison, which was at the time occupied by Alfred Phillips, who was lodged therein, and the ownership of which is unknown to the grand jury." It was found, and the defendant convicted, under section 3780 of the Code of 1886, which declares: "Any person who willfully sets fire to, or burns any steam-boat, or vessel, in which there is at the time any human being, or any prison or jail, or any other house or building, which is occupied by a person lodged therein, or any inhabited dwelling-house, or any house adjoining such dwelling-house, whether there is, at the time, in such dwelling-house, any human being or not, is guilty of arson in the first degree." Whether the offense charged in the indictment is arson in the first degree, is to be determined from the facts averred as to the character of the structure, and the circumstances of the burning.

It is objected, that the indictment fails to state the facts which are essential to constitute the offense intended to be charged. The specified objections are: (1.) That the averments do not show, with the degree of certainty required in criminal pleadings, that the structure alleged to have been burned comes within either of the classes specifically defined in section 3780; (2.) That the indictment does not sufficiently allege that the house was occupied by a person lodged therein. The first objection is founded on the idea, that it was intended to charge the specific act of burning a *prison*. On this assumption of the legal effect and meaning of the indictment, it is contended, that the words *used as a prison* are not the equivalent of an averment that the structure was in fact a prison. The contention arises from a miscon-

ception of the purposes and scope of the statute, and the purport of the indictment. At common law, the offense is regarded as an offense peculiarly against property and its possession. In defining arson in the first degree, and prescribing the penalty, the statute has special reference to the protection of human life.—*Davis v. State*, 54 Ala. 357. It enlarges the subjects of arson, and extends them beyond those which the offense was considered, at common law, to reach. It not only designates particular kinds of structures, but, by comprehensive language, includes any house or building, not of the specified kinds, "which is occupied by a person lodged therein," without respect to the uses to which it may be otherwise appropriated. The words, *used as a prison*, were not employed as an allegation of the fact necessary to a conviction of the offense. They are merely descriptive, employed to identify the house burned, the ownership being unknown. They are surplusage. Without them, the indictment charges arson in the first degree, substantially in the words of the statute. A house or building, whatever may be its character or use, if occupied at the time of the burning by a person lodged therein, comes within the statutory definition.

An indictment for arson, under a statute which aggravates the offense because there is a person in the structure burned, must aver the fact, in order to charge the aggravated crime. It is contended, that the present indictment does not allege that the house burned was occupied at the time by a *person*. The averment is, "which was occupied at the time by Alfred Phillips, lodged therein." The form of an indictment for arson in the first degree prescribed by statute, uses the words "in which there was at the time a human being." But the indictment need not strictly pursue the words used in a statute to define an offense; words conveying the same meaning are sufficient.—Code, 1886, § 4370. The use of a name applicable to, and representing a human being, to designate any object, is equivalent, *prima facie*, to an allegation that the object so designated is a person. The averment of the indictment, in this respect, conveys the same meaning as the words used in the statute to define the offense.

2. The defendant further complains, that he was denied his constitutional right to have compulsory process for obtaining witnesses in his favor. The object and meaning of the constitutional guarantee is, that the court will exer-

[Childress v The State.]

cise its powers, by the processes usual and known to the law, to compel the attendance of witnesses on behalf of the accused. It does not operate to take from the court the discretion as to granting or refusing continuances, or the authority to adopt proper means for ascertaining whether an application for a continuance is made with the view of obtaining a fair trial, or for the mere purpose of delay. The defendant had previously obtained the issuance of subpoenas for his witnesses, which is the ordinary preliminary process to secure their attendance. Extraordinary cumpulsory process, such as attachment, is not resorted to, until the witness has placed himself in contempt, and the propriety and the necessity of the process is shown. The court is not bound to order an attachment, *ex mero motu*, on the failure of a witness to appear in answer to the subpoena. It is not shown that the defendant asked for an attachment, or other compulsory process. Had he done so, it is manifest that the court would have granted his application; for attachments were ordered to be immediately issued against the same witnesses, on the application of the prosecuting solicitor. Neither does it appear that any showing was made, that the witnesses were not absent by the procurement or consent of defendant. Under the circumstances, we can not say that the court disregarded the rights of defendant, by requiring him to put in writing what he expected to prove by the absent witnesses, and putting the State on the admission that they would so testify.—*White v. State, ante,* p. 69; *DeArman v. State,* 77 Ala. 10.

3.   By the statute, "any fact which is unknown to the grand jury, and which is not an essential ingredient of the offense, may be so charged in the indictment."—Code, 1886, § 4877. The ownership of the house having been affirmed in the indictment to be unknown to the grand jury, it was not incumbent upon the State to prove the fact. Such is the presumption, until the contrary is shown. The rule is, that the grand jury having affirmed therein that the ownership was unknown to them, the indictment will support a conviction, unless it is shown that the fact was known to the grand jury. Proof of the ownership before the petit jury, or that it could have been ascertained by reasonable diligence, does not authorize the acquittal of defendant.—*Duval v. State,* 63 Ala. 12.

4.   The defendant further claims, that the court erred in refusing to instruct the jury, at his request, that the state-

ments made by him, of his innocence of the charge, which were brought out by the State on the examination of the State's witnesses, "are evidence to be considered by them, just as any other evidence in the case." The charge would import to the jury, that they were bound, as matter of law, to give to the defendant's declarations of innocence the same weight they give to the other evidence. Declarations, made at the same time, must be received as a whole; those which criminate, and those which exculpate. The jury should neither reject, nor give credence, capriciously; but they are not bound to give credence equally to every part. It is their province to weigh the declarations of the accused, and determine what portions they believe, on a consideration of the time, occasion, and circumstances under which they were made, the motive which operated on the defendant, and their consistency or inconsistency with the other credible evidence. The charge was calculated to mislead, and would have invaded the province of the jury.—*McKee v. State*, 82 Ala. 32.

5. The defendant further complains, that the court erred in refusing to charge the jury, that before they can convict, the State must prove, beyond a reasonable doubt, that the house burned was used as a prison, and that it was not sufficient if the proof shows that it was used as a corn-crib by the owner, and that he gave the officers permission to put prisoners in the house. The law undoubtedly requires, that the guilt of the accused shall be fully proved, and that every ultimate and essential fact necessary to conviction shall be established beyond a reasonable doubt. The rule, however, does not require that every circumstance, offered in evidence, and each fact which may aid the jury in reaching the conclusion of guilt, shall be clearly proved. The reasonable doubt, which calls for an acquittal, must arise on the whole evidence. The law exacts a conviction, if the jury are satisfied, on weighing the entire evidence, of the defendant's guilt to a moral certainty.—*Ming v. State*, 73 Ala. 1. We have said, that the expression, *used as a prison*, is merely descriptive, and as such may not be entirely rejected. Being descriptive, it involves a question of variance; and it is sufficient if the proof reasonably satisfies the jury that the house was so used. It is a fact, or circumstance, which may aid the jury in reaching a conclusion as to the identity of the house; but, not being a fact essential to conviction of the offense charged in the indictment, the State is not required to prove it beyond a reasonable doubt, and the defendant is not entitled

[Childress v. The State.]

to an acquittal unless the State makes such *quantum* of proof of the fact.

6. The defendant further requested the court to charge the jury, that the State must prove, beyond a reasonable doubt, that Phillips was alive at the time of the burning. In view of the evidence, which indisputably shows that he was alive when he was put in the house, a few hours prior to the time it was burned, the jury would have understood the charge as instructing that the State must prove, by positive and direct evidence, that he was alive at the precise time when the house was set on fire. The charge would have authorized the jury to infer his death within a few hours, despite the absence of any evidence rebutting the presumption in favor of the continuance of life, which presumption casts the *onus* on the party affirming its extinction.

7. The statute declares that a conviction of felony can not be had on the testimony of an accomplice, unless corroborated by other evidence, tending to connect the defendant with the commission of the offense.—Code, 1886, § 4476. Before corroboration can become a condition of conviction, the jury must be reasonably satisfied that the witness was an accomplice. The record fails to disclose any evidence showing that the witness, Foote, was an accomplice; and if he was, it shows that his testimony was corroborated by other evidence tending to connect the defendant with the commission of the offense.—*Ross v. State*, 74 Ala. 532; *Bass v. State*, 37 Ala. 439.

8. The defendant further complains, that the counsel for the State, in addressing the jury, transgressed the limits of legitimate discussion, and that the court failed to interfere. A presiding judge is called on to perform a most delicate and responsible duty, when required to interfere with the freedom of argument, which is the privilege of counsel. Much must be committed to his sound discretion, as to the course and character of the debate, which should be allowed on the trial of a case, whether civil or criminal. When, however, there occurs an unwarranted abuse of the privilege, it becomes the imperative duty of the judge to restrain and rebuke, and, by positive and explicit instructions, disabuse, as far as practicable, the minds of the jury of any prejudicial impression. If, on objection being made, he fails to do so, such failure will work a reversal of the judgment, if injustice to the accused is the probable result. It is both the duty and the right of counsel to present the case

of his client as fully and forcibly as the evidence, its tendencies, and the inferences therefrom, may justify. Within these limits, the widest range of discussion should be accorded; but appeals to the prejudices, not pertaining to the case, and not based on the tendencies and inferences of the proof, should be discountenanced by the courts, and the administration of the law protected against discredit and debasing influences.

With a proper regard for the privilege of counsel, and the value of legitimate debate, in the ascertainment of truth, this court has declared, that counsel keep within legitimate bounds, when, on the one hand, they invoke the mercies of the law, and the benefit of reasonable doubts, and, on the other, urge a fearless and unflinching administration of the criminal law, avoiding all gross and unwarranted vituperation, abuse, and appeals to prejudice. In order that a statement may come within the rule which prescribes the limits of fair discussion, "the statement must be made *as of fact;* the fact stated must be unsupported by any evidence, must be pertinent to the issue, or its natural tendency must be to influence the finding of the jury."—*Cross v. State,* 68 Ala. 476; *Com. Fire Ins. Co. v. Allen,* 80 Ala. 571. A careful examination of the record fails to show that the statements of the counsel, made in the opening argument to the jury, fall within the rule. They may be somewhat harsh, made in the heat of debate, but they were not unsupported by the evidence. Counsel for defendant, in addressing the jury, referred to Phillips' Famous Cases of Circumstantial Evidence, and to two cases which occurred, one in the county of the trial, and the other in an adjoining county. The remarks of the prosecuting counsel, in the concluding argument, which were objected to, appear to have been strictly in reply to this allusion of counsel for the accused. They were intended to fortify the jury against the influence of such considerations, and to urge a decision of the case according to the law and the evidence. It does not affirmatively appear that counsel abused their privilege, or that it was the duty of the court to interfere. Furthermore, the court instructed the jury, *ex mero motu,* that they must look to the testimony of the witnesses, and not to the statements of counsel, for the facts.

We have considered all the questions which counsel have deemed important and material enough to be urged in argument. We may remark, however, that we have carefully

[Olive v. The State.]

considered the other exceptions to the rulings of the court shown by the record, and find no reversible error.

Affirmed.