MOORE, Judge,
concurring in part and dissenting in part.
I concur as to that portion of the main opinion affirming the judgment of the trial court insofar as it refused to hold the custodians of the children in contempt of court. I agree with the implied holding in the main opinion that the trial court had subject-matter jurisdiction over the custody dispute between the parties, but I dissent as to that portion of the main opinion affirming the judgment of the trial court insofar as it found the mother unfit and awarded custody of the children to the custodians.

*1233
Jurisdiction

Before addressing the substantive aspects of the judgment awarding custody of the children to the custodians, this court must first determine for itself whether that judgment supports an appeal. J.B. v. A.B., 888 So.2d 528 (Ala.Civ.App.2004). A judgment entered by a lower court without subject-matter jurisdiction is void and will not support an appeal. Id. The trial court, a circuit court, generally has subject-matter jurisdiction to enter a judgment resolving a child-custody dispute, see Ala. Const. 1901, Art. IV, § 142(b) (Official Recomp.) (“The circuit court shall exercise general jurisdiction in all cases except as may otherwise be provided by law.”); however, a circuit court does not have subject-matter jurisdiction to adjudicate a dependency petition because, by statute, juvenile courts have exclusive jurisdiction over petitions in which the dependency of a child has been alleged. See former § 12-15-30(a), Ala. Code 1975.[2] Whether the trial court in this ease, a circuit court, entered a valid judgment depends upon whether it adjudicated a pure custody dispute or purported to decide a controversy regarding the dependency of the children.
In March 2008, the custodians moved to intervene in the parents’ pending divorce action and filed complaints in which they alleged, among other things, that they had acted as the de facto custodians of the children since September 2007, when the mother and the father had allegedly voluntarily relinquished custody to the custodians, and
“10. That both children are without a parent or guardian able to provide for the child’s support, training or education.
“11. That the parents of the children are unable to discharge their responsibilities to and for them.
“12. That the children are without proper parental care and control necessary for the children’s well being because of the faults or habits of the parents or their neglect or refusal, when able to do so to provide them.”
The foregoing numbered allegations fall within the ambit of former § 12-15-l(10)b., k., and j.[3]
*1234 In J.W. v. N.K.M., 999 So.2d 526 (Ala.Civ.App.2008), a maternal great-aunt alleged in a petition filed in a juvenile court that she and other family members had long exercised proper custody and care over a child whose mother had abandoned the child and whose mother was unfit to resume custody of the child as the mother intended. 999 So.2d at 542. This entire court agreed that a child is alleged to be dependent only if, in addition to the circumstances set out in subsections a. through m. of former § 12-15-1(10), the child is also alleged to be “in need of care or supervision” as required by former § 12-15-1(10)n. 999 So.2d at 532. The majority reasoned that the maternal great-aunt’s allegations, which tracked the language of former § 12-15-l(10)e., i., and j., along with the prayer that the child be declared dependent and that the child’s custody be awarded to the maternal relatives implied that the child was “in need of care or supervision,” so as to allege the dependency of the child and to confer subject-matter jurisdiction on the juvenile court. 999 So.2d at 533.
In this case, as in J.W., the custodians alleged facts tracking the language of the dependency statute and requested custody of the children, but, unlike in J.W., the custodians did not request that the children be declared dependent. However, the reasoning from J.W. suggests that the custodians, by seeking custody of the children, implied that the children were “in need of care or supervision” within the meaning of former § 12-15-1 (10)n., which, when coupled with their allegations of parental unfitness under former § 12-15-l(10)b., k., and j., would amount to an implied allegation of dependency. If that is the case, then, consistent with J.W., only a juvenile court would have had subject-matter jurisdiction to adjudicate the complaints filed by the custodians.
I dissented in J.W. because I maintained that when a relative alleges that he or she has been exercising proper care and custody of a child and he or she is seeking a continuation of that custody due to the abandonment or unfitness of the child’s parents, such allegations negate any implication that the child is “in need of care or supervision.” 999 So.2d at 541-42. I maintained that those allegations do not state a claim that the child is dependent, but simply state a controversy over the future custody of the child, a dispute which falls within the subject-matter jurisdiction *1235 of our circuit courts. 999 So.2d at 542 (Moore, J., dissenting); see also T.T.T. v. R.H., 999 So.2d 544, 560-61 (Ala.Civ.App.2008) (Moore, J., dissenting).
Consistent with my dissent in J.W., I construe the allegations contained in the complaints in intervention filed by the custodians as merely alleging a pure custody dispute. By alleging that they had been exercising de facto custody of the children for six months, and by claiming that the best interests of the children would be served by continuing that custody due to the unfitness of the parents and the voluntary relinquishment of the children’s custody by the mother, the custodians implied that they were providing the children proper care and supervision, thereby negating any implication that the children were “in need of care or supervision” due to their parents’ conduct and circumstances. Hence, the complaints do not constitute dependency petitions, which only a juvenile court could adjudicate; they allege a pure custody dispute, which the trial court, as a circuit court, had the authority to adjudicate.
I point out, however, that by acknowledging, without comment, that the custodians did not allege the dependency of the children, the majority silently contradicts the holding in J.W. I believe that contradiction will only confuse the bench and the bar regarding the proper jurisdictional line separating juvenile courts and circuit courts when faced with a custody dispute regarding children of allegedly unfit parents. I would resolve that dispute by overruling J.W. and similar cases and by holding that a complaint or petition in which a de facto custodian alleges that he or she is properly caring for a child due to the abandonment by, or unfitness of, a parent, and in which that custodian seeks a continuation of such custody, states a pure custody dispute that should be resolved by a circuit court.

Unfitness

The concept of “unfitness” has been rooted in our child-custody jurisprudence since at least 1860 when our supreme court stated:
“So strong is the presumption, that ‘the care which is prompted by the parental instinct, and responded to by filial affection, is most valuable of all’; and so great is the reluctance of the court to separate a child of tender years from those who according to the ordinary laws of human nature, must feel the greatest affection for it, and take the deepest interest in its welfare, — that the parental authority will not be interfered with, except in case of gross misconduct, or where, from some other cause, the parent wants either the capacity or the means for the proper nurture and training of the child. Where a contest for the custody of a child arises between its father or mother and a third person, the superior claim of the parent ought not, in our opinion, to be disturbed, unless it plainly appears that the interests of the child require it to be set aside. Whenever it is shown that the parent is guilty of gross ill-treatment or cruelty towards his infant children, or that his conduct or domestic associations are such that the children cannot associate with him without moral contamination, it is the duty of the court to interfere for their protection, and to appoint a suitable person to take care of them and superintend their education.”
Striplin v. Ware, 86 Ala. 87, 89-90 (1860) (citations omitted). In Striplin, the court affirmed a judgment that refused to remove children from the custody of their natural mother and their stepfather because, the court held: “The evidence in this case is wholly insufficient to show that *1236 the mother is, either physically or mentally, incapable of taking proper care of these children.” 36 Ala. at 90.
Over the years, our supreme court has only strengthened the principles set out in Striplin by requiring an express finding of unfitness, with such a finding to be premised on clear and convincing evidence. See, e.g., Ex parte A.R.S., 980 So.2d 401, 404 (Ala.2007); Ex parte Terry, 494 So.2d 628, 632-33 (Ala.1986); and Chandler v. Whatley, 238 Ala. 206, 208-09, 189 So. 751, 753-54 (1939). The appellate courts of this state have also recognized that the fitness of a parent must be measured by the parent’s current circumstances. See Ex parte Phillips, 266 Ala. 198, 200, 95 So.2d 77, 79 (1957) (“ ‘A finding of unfitness may be superseded by changed and improved conduct.’ ” (quoting Lockard v. Lockard, 102 N.E.2d 747, 748, 63 Ohio Law Abs. 549 (Ct. Of Common Pleas 1951))); Edwards v. Sessions, 254 Ala. 522, 524, 48 So.2d 771, 772 (1950) (“The mother has made mistakes, grievous mistakes, but this should not be sufficient to take the child from the mother if the mother shows indications of becoming a good mother and is presently able reasonably to care for the child.”); and Borsdorf v. Mills, 49 Ala.App. 658, 661-62, 275 So.2d 338, 340-41 (Civ.App.1973). Today, a child may be removed from the custody of a natural parent when a trial court expressly finds that a nonpar-ent has established by clear and convincing evidence that the parent is currently unfit to properly care for the child.[4] Ex parte Terry, 494 So.2d at 632-33. However, the substantive meaning of the term “unfitness” carries with it the same connotation that it did at the time the opinion in Strip-lin was released — an inability or unwillingness on the part of a parent to provide properly for the needs of his or her children for food, clothing, shelter, medical care, education, nurturing, and protection.
I cannot concur that the trial court reasonably could have been clearly convinced from the evidence presented by the custodians that the mother currently demonstrates an inability or unwillingness to properly meet the needs of her children. The evidence is undisputed that, until her illnesses, the mother provided not only proper, but exemplary, care for these two children with special needs, often without financial aid or other aid from the father. The mother staved off her own medical requirements while properly caring for the children. When finally succumbing to the need for medical care, the mother arranged for the children to be properly cared for by the custodians. All of those actions strongly evidence a concerned and nurturing mother.
Admittedly, during her illnesses, the mother made some poor choices — most notably, misrepresenting her condition to the paternal aunt and failing to consistently visit with the children while she was convalescing. However, the evidence does not suggest that the mother swindled the children out of their Social Security benefits. The evidence is undisputed that the mother offered to provide support for the children but that the custodians refused it, and the mother testified without contradiction or impeachment that she either saved the money or used it for bills or items for the children. The only real evi *1237 dence as to the mother’s suspected illegal-drug abuse consists of one positive methamphetamine test, which had not been duplicated. Even the evidence implying that the mother may have abused legal drugs is not coupled with any evidence indicating that such alleged abuse impaired the ability of the mother to care for her children. See Wester v. Wester, 500 So.2d 1106, 1107 (Ala.Civ.App.1986) (implying that illegal-drug use that has not been shown to have a detrimental impact on children will not in itself justify a change of custody). In fact, the evidence shows that the mother’s third child, an infant, was returned to the mother’s custody by the local department of human resources and remained in her care after the suspicious drug-test results. It seems incongruent for a state court to find that the mother is unfit to have the custody of the two children at issue, for whom she has demonstrated a capability to meet their special needs, while a state agency specializing in the protection of the welfare of children recognizes the mother’s fitness to raise her third child with her live-in paramour.
It also defies logic that the mother was deemed unfit by the trial court yet was given unsupervised visitation with the children from Friday at 6:00 p.m. to Sunday at 6:00 p.m. every other weekend, along with unsupervised visitation on certain holidays, during spring break, for three weeks during the summer, and at all other times to which the parties mutually agree. That judgment results in an “unfit” parent exercising unrestricted custody of the children for a minimum of 98 days a year. As this court noted in Slaton v. Slaton, 682 So.2d 1056, 1058 (Ala.Civ.App.1996), “[djuring a period of unsupervised visitation, the noncustodial parent becomes the person solely responsible for the child’s safety and welfare.” Thus, in fashioning a visitation award, “the trial court should consider whether the noncustodial parent is fit to care for the child during the visitation.” Id. The visitation provision of the judgment in this case reads exactly like any divorce judgment in which a trial court concludes that the custodial parent should exercise primary physical custody but that the noncustodial parent should have liberal contact with the children. Such judgments are based on the assumption that both parents are fit, and the decision as to primary physical custody rests solely on the best interests of the child. By awarding the mother such visitation rights, the trial court obviously must not have been clearly convinced from the evidence of any real safety concerns regarding the children that would justify preventing the mother from exercising their custody for extended periods. See Ex parte G.C., 924 So.2d 651, 672 (Ala.2005) (Lyons, J., concurring in part and dissenting in part) (“Indeed, under the trial court’s order, the father was awarded very specific and liberal unsupervised visitation with the child, certainly an anomalous result if he is so unfit.”).
That the mother is presently willing to care for her children cannot be disputed. That she did for years admirably perform her parental duties appears beyond question. Could the evidence regarding the mother’s behavior during the six months that she allowed the custodians to care for her children clearly convince a reasonable fact-finder that the mother is unable to assume that same level of care? I think not. I believe the evidence is insufficient to support a finding that the mother is presently unfit, and I construe the visitation provisions of the judgment of the trial court as revealing its own misgivings regarding its finding of unfitness; therefore, I would reverse the judgment and instruct the trial court to award custody of the children to the mother. Because a majority of the court disagrees, I respectfully *1238 dissent.[5]

. Section 12-15-30(a) has been amended and renumbered as § 12-15-114(a), Ala.Code 1975, which provides, in pertinent part: "A juvenile court shall exercise exclusive original jurisdiction of juvenile court proceedings in which a child is alleged to have committed a delinquent act, to be dependent, or to be in need of supervision.” See Act No. 2008-277, § 3, Ala. Acts 2008 (effective January 1, 2009). However, former § 12-15-30(a) applied at the time of the filing of the complaints in intervention.

. At the time the custodians filed their complaints in intervention, former § 12-15-1(10), Ala.Code 1975, defined a "dependent child” as a child:
"a. Who, for any reason is destitute, homeless, or dependent on the public for support; or
"b. Who is without a parent or guardian able to provide for the child’s support, training, or education; or
"c. Whose custody is the subject of controversy; or
"d. Whose home, by reason of neglect, cruelty, or depravity on the part of the parent, parents, guardian, or other person in whose care the child may be, is an unfit and improper place for the child; or
"e. Whose'parent, parents, guardian, or other custodian neglects or refuses, when able to do so or when such service is offered without charge, to provide or allow medical, surgical, or other care necessary for the child's health or well-being; or
"f. Who is in a condition or surroundings or is under improper or insufficient guardianship or control as to endanger the morals, health, or general welfare of the child; or
"g. Who has no proper parental care or guardianship; or
"h. Whose parent, parents, guardian, or custodian fails, refuses, or neglects to send the child to school in accordance with the *1234 terms of the compulsory school attendance laws of this state; or
"i. Who has been abandoned by the child's parents, guardian, or other custodian; or
"j. Who is physically, mentally, or emotionally abused by the child's parents, guardian, or other custodian or who is without proper parental care and control necessary for the child’s well-being because of the faults or habits of the child’s parents, guardian, or other custodian or their neglect or refusal, when able to do so, to provide them; or
"k. Whose parents, guardian, or other custodian are unable to discharge their responsibilities to and for the child; or
"l. Who has been placed for care or adoption in violation of the law; or
"m. Who for any other cause is in need of the care and protection of the state; and
"n. In any of the foregoing, is in need of care or supervision."
By Act No. 2008-277, Ala. Acts 2008, the provisions of the former Alabama Juvenile Justice Act, § 12-15-1 et seq., Ala.Code 1975, were either repealed or amended, renumbered, and incorporated into the current Alabama Juvenile Justice Act ("the AJJA”), § 12-15-101 et seq., Ala.Code 1975. Former § 12-15-1(10) has been amended and renumbered as § 12-15-102(8), Ala.Code 1975. The effective date of the AJJA is January 1, 2009; therefore, § 12-15-102(8) is not applicable to this case.

. Under Ex parte Terry, a parent also may lose custody to a nonparent if the parent has voluntarily forfeited custody of the child. 494 So.2d at 632. In this case, the trial court found that the mother had not voluntarily forfeited her custodial rights by allowing the custodians to assume the care of the children during her illnesses. The custodians did not file a cross-appeal as to that finding, so it is now the law of the case that the mother did not voluntarily forfeit her rights to the custody of the children. See generally Norandal, U.S.A., Inc. v. Graben, 18 So.3d 405, 410 (Ala.Civ.App.2009).

. Because I would reverse die custody aspects of the judgment, I pretermit any discussion of the mother's argument that the trial court erred in separating the children.