This appeal is from a final divorce decree. The appellee, Rachael Vail, petitioned the Circuit Court of Tuscaloosa County for a divorce from the appellant, Rubert Milton Vail. Her complaint alleged incompatibility of temperament, irretrievable breakdown of the marriage, habitual drunkenness, physical violence, and adultery as the grounds for divorce.
After a hearing ore tenus, the trial court divorced the parties on the grounds of incompatibility of temperament and irretrievable breakdown of the marriage. Furthermore, the court found that the husband "was guilty of many acts of gross misconduct which, in the opinion of the court, directly caused the conflicts, marital problems and the eventual breakdown of the marriage." The court awarded alimony in gross to the wife.
In brief the husband urges that: (1) the division of the common estate of the appellant and the appellee was arbitrary and excessive; (2) the trial court erred in admitting evidence of adultery committed after the filing of a complaint for divorce without proof of adultery prior to such filing; and (3) the trial court erred in requiring appellant to testify as to his sexual relations with a woman to whom he was not married despite his invocation of the privilege against self-incrimination.
The record reveals that the husband and wife were married in 1954 and had been married approximately twenty-two years before they were divorced in 1976. They had one son by their marriage. The son was married and twenty years of age at the time of the divorce. The wife is forty-eight years old. At the time of the trial she was overweight and had on prior occasions suffered from dizziness and fatigue as a result of the medication she took in response to that condition. The husband is forty-four years old.
Throughout the marriage the wife had worked at Bryce Hospital and at the time of the divorce was earning approximately $7,647 a year from that employment. The husband had worked at several different jobs during the period of the marriage; however, since 1972 he had been engaged in the backhoe business. This business grossed almost $26,000 in the year prior to the divorce and it was recognized by both parties that the husband's backhoe business produced the largest portion of the family's income.
In addition, the husband and wife ran a trailer court which was located on their jointly owned 7.9 acre tract of land on Lake Tuscaloosa. This land was bought from their joint earnings and the proceeds from the sale of a parcel of land owned solely by the wife. The land was purchased prior to the construction of Lake Tuscaloosa and through his excavating efforts the husband was able to prevent a substantial portion of the property from being inundated by the lake. He also constructed the trailer park which was located on the land. The wife collected the rent, kept the books, and generally managed the business of the trailer park. The trailer park netted $3,400 per year. It is valued at $31,800.
The family home valued at $38,000 and two welding shops valued at $9,400 are also located on the 7.9 acre tract. The two welding shops are used in the husband's business. Both the house and the shops were constructed primarily from the labors of the husband and those he employed.
The parties maintained separate bank accounts and at the time of the divorce the wife's account contained $1,500 while the husband's held $3,600. The wife is entitled to receive a pension upon retirement from her employment provided she pays the $2,000 necessary to reinstate the pension.
The trial court's award of alimony in gross provided the wife with all of the family's real estate except for three-fourths of an acre which was vested in the husband. The wife's parcel contained the family home and the trailer court. The husband's parcel contained the two welding shops from which he ran his backhoe business.
In addition, the wife received the family automobile and almost all the household furniture. The husband retained for *Page 988 
himself out of that furniture a bedroom suite and pool table. He also received all the shop and business equipment, two trucks, a bronco wagon, and the family boat.
The appellant-husband contends that the manner in which the trial court awarded permanent alimony was arbitrary and that the amount was excessive.
Although the grounds cited for the divorce in the trial court's decree were incompatibility and irretrievable breakdown, there was substantial testimony at trial as to the physical abuse of the wife and her son by the husband. Testimony also indicated that the husband drank heavily and stayed out until the early hours of the morning. There was additional evidence given that the husband had engaged in extramarital relations both prior to and after the filing of the divorce petition.
The trial court's award of alimony was based in part on its finding that the husband "was guilty of many acts of gross misconduct" which contributed to "the eventual breakdown of the marriage," and that the divorce was not the fault of the wife.
The trial court in granting a divorce has the authority to award to the wife alimony in gross, the amount being a matter within the discretion of the trial court as the circumstances may justify. Davis v. Davis, 274 Ala. 277, 147 So.2d 828. And such an award will not be revised or reversed on appeal in the absence of palpable abuse. Maddox v. Maddox, 276 Ala. 197,160 So.2d 481; Capra v. Capra, 56 Ala. App. 90, 319 So.2d 286.
Moreover, if an award is alimony in gross each case must stand upon its own facts and no mathematical formula may be applied. Huggins v. Huggins, 57 Ala. App. 691, 331 So.2d 704. Instead, a number of relevant factors must be considered. Among these factors are: the future prospects of the parties, their ages, sex, health, station in life, how long they were married, the sources from which the common property came, and in appropriate cases, the conduct of the parties with reference to the cause of the divorce. Sides v. Sides, 284 Ala. 39,221 So.2d 677; Brooke v. Brooke, 57 Ala. App. 704, 331 So.2d 715. And the conduct of the parties may be taken into consideration in awarding alimony even where the divorce is based on the "incompatibility" or "irretrievable breakdown" provisions of the divorce statute. Huggins v. Huggins, supra; Phillips v.Phillips, Ala.Civ.App., 344 So.2d 786.
Thus, the trial court was not in error in considering the husband's misconduct and the wife's lack of misconduct in the instant case. Indeed, testimony as to the husband's physical abuse of his wife and son, his acts of adultery and his excessive drinking might well warrant a finding by the trial court that the husband had engaged in "gross misconduct."[1] On the other hand, the wife was guilty of no misconduct and her husband admitted that she had been a good wife to him.
These facts when considered with other factors such as the wife's current earning capacity from her employment at Bryce Hospital and the income from the trailer park, her age and health problems, the contribution which she made in the purchase and upkeep of the 7.9 acre tract, and the fact that the husband was permitted to retain the portion of their land which, though small in size, produced the bulk of the family income do not demonstrate that the trial judge abused his discretion, nor that as a matter of law or equity the award was excessive.
The appellant also contends that the trial court erred in admitting evidence of adultery committed after the filing of a complaint for divorce without proof of adultery prior to such filing. *Page 989 
The facts with regard to this matter are as follows. On February 26, 1976 the appellee filed a petition for divorce. On the same date the trial court entered an order granting her exclusive use of the common residence of the parties.
At the trial the wife and her son were both questioned as to the appellant-husband's actions prior to February 26, 1976. They gave testimony that prior to the date of the petition he had begun to keep late hours — often coming home as late as 3:00 a.m. The wife testified that she suspected her husband of having an affair with a woman named Sally Hunter. The son testified that while driving by the home of Mrs. Hunter he had seen the family boat there, and had stopped and talked to his father and Mrs. Hunter who were together at that time. There was also testimony concerning acts of adultery between the husband and a second woman.
Furthermore, both appellee and appellant testified that after the divorce petition had been filed, Mrs. Hunter had gone to the appellee's home and asked her "to give her husband up."
On the basis of this testimony the trial judge compelled the husband, over the invocation of his constitutional privilege against self-incrimination, to testify on cross examination about his sexual activities with Mrs. Hunter. This testimony concerned activities which had occurred after the filing of the petition for divorce. The appellant argues that the admission of such evidence was irrelevant and violated his constitutional privilege against self-incrimination.
The fact of adultery may be inferred from circumstances leading to it as a necessary inference. White v. White,278 Ala. 682, 180 So.2d 277. Incidents subsequent to the filing of the divorce petition are admissible to corroborate evidence of adultery prior to the date of filing provided adultery is alleged in the complaint. Hilley v. Hilley, 275 Ala. 617,157 So.2d 215. In the instant case the complaint alleged adultery as one of the grounds for the divorce. At trial there was testimony which dealt with the allegation of adultery and this testimony concerned the husband's activities prior to filing. Although such evidence may have been insufficient to prove the charge of adultery, it was sufficient to permit the trial court to admit evidence of his actions subsequent to the filing of the wife's complaint.
However, such evidence, even though admissible, cannot be the basis for the granting of a divorce decree. Hilley v. Hilley,supra; Rudicell v. Rudicell, 262 Ala. 41, 77 So.2d 339. In the present case evidence of the husband's adulterous activities was not the basis for the court's decree. Instead, the court granted the divorce on the grounds of incompatibility of temperament and irretrievable breakdown of the marriage. And, although the court did not grant the divorce on the grounds of adultery, evidence of the husband's adulterous behavior after the filing of the petition was, nevertheless, relevant to the inquiry as to the amount of the award.
The trial court has the discretion to consider all conduct which is relevant to the cause of the divorce. Evidence of the husband's actions after the filing of the divorce petition may be considered as relevant to his actions prior to the filing. Therefore, it cannot be said that as a matter of law the trial court erred in considering evidence of the husband's adultery occurring after the filing of the petition for the purpose of fixing the alimony award.
Appellant further contends that his testimony with regard to his relationship with Sally Hunter after the filing of the complaint for divorce violated his constitutional privilege against self-incrimination.
Appellant's contention presents a novel question. Although recognizing that the privilege against self-incrimination exists in civil cases, no Alabama case has spoken to the issue raised here.
Nonetheless, authority from other jurisdictions demonstrates that a husband or wife accused of adultery may invoke the privilege against self-incrimination with respect to questions concerning his or her alleged adultery with third parties. *Page 990 Husband v. Wife, 201 A.2d 171 (Del.Super.); Payne v. Payne,33 Md. App. 707, 366 A.2d 405. See Bishop v. Bishop, 157 Ga. 408,121 S.E. 305; Schrad v. Schrad, 186 Neb. 462, 183 N.W.2d 922.
Individuals who testify in either civil or criminal proceedings have the right to refuse to answer relevant questions where the answer might tend to incriminate them in future criminal proceedings. Lefkowitz v. Turley, 414 U.S. 70,94 S.Ct. 316, 38 L.Ed.2d 274; McCarthy v. Arndstein,266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158. And it is not necessary that an individual's testimony will with certainty lead to his criminal prosecution and conviction. Payne v. Payne, supra. A witness is entitled to invoke the privilege where, as a practical matter, there is only a possibility of prosecution. Hoffman v. UnitedStates, 341 U.S. 479, 488, 71 S.Ct. 814, 95 L.Ed. 1118; UnitedStates v. Miranti, 253 F.2d 135, 139.
In this jurisdiction adultery is a crime. Ala. Code, Title 14, Section 16. Although unlikely, there exists a possibility that appellant may be subjected to criminal prosecution under this statute. Therefore, appellant was entitled to invoke the privilege against self-incrimination when questioned about his alleged sexual relations with a woman who was not his wife. The trial court erred in compelling appellant to testify about his adulterous relationship with Sally Hunter.[2]
Despite the fact that the trial court forced appellant to give testimony about his extramarital activities in violation of his privilege against self-incrimination, appellant was not prejudiced by the court's action. It is axiomatic that a trial court will not be reversed for a ruling unless it is shown that prejudice to the appellant resulted therefrom. Speigle v.Chrysler Credit Corp., 56 Ala. App. 469, 323 So.2d 360, cert.den. 295 Ala. 420, 323 So.2d 367. In the present case, appellant was questioned on cross-examination about his adulterous relationship with Sally Hunter. The questions which were asked of the appellant at that time called for "yes" or "no" answers. When the court ordered him to respond, appellant answered "yes." This answer merely corroborated the testimony already given by his wife and son. If he had answered "no," or had been allowed to invoke his constitutional privilege, his answer or exercise of the privilege would have had no effect on the outcome of the case in view of the fact that the divorce was awarded on the grounds of incompatibility of temperament and irretrievable breakdown of the marriage rather than adultery. Nor would a negative reply or reliance on the privilege against self-incrimination have affected the award of alimony since there was additional testimony from sources other than appellant that appellant had engaged in acts of *Page 991 
misconduct including physical cruelty, adultery, and drunkenness. This additional testimony of appellant's misconduct was sufficient to sustain on appeal the trial court's award of alimony.
Our supreme court has held that where a cause is tried before a trial court without a jury, admission of illegal evidence raises a presumption of injury and requires reversal of judgment unless remaining evidence is sufficient to support thejudgment. Pigford v. Billingsley, 264 Ala. 29, 84 So.2d 664. Error in compelling the husband to answer questions concerning his adulterous acts was not prejudicial in view of additional evidence supporting the decree rendered. See Meriwether v.Crown Investment Corp., 289 Ala. 504, 268 So.2d 780.
Moreover, the appellant will not be prejudiced by the trial court's actions if he should subsequently be subjected to a criminal prosecution for adultery. When a witness is improperly compelled to answer a question, after claiming his privilege against self-incrimination, his answer will be deemed compulsory, and such answer may not be placed in evidence against him in a subsequent trial. Lefkowitz v. Turley, supra;State v. Lloyd, 152 Wis. 24, 139 N.W. 514.
There being no prejudice to appellant, the trial court's decree is affirmed.
AFFIRMED; MOTION FOR ATTORNEY'S FEE DENIED.
HOLMES, J., concurs.
WRIGHT, P.J., dissents in part, concurs in part.
[1] Title 34, Section 32, Code of Alabama 1940 (Recomp. 1958) provides:
 "If the divorce is in favor of the wife for the misconduct of the husband, the judge trying the case shall have the right to make an allowance to the wife out of the husband's estate, or not make her an allowance as the circumstances of the case may justify, and if an allowance is made it must be as liberal as the estate of the husband will permit, regard being had to the condition of his family and to all the circumstances of the case."
[2] In its brief to this court and in oral arguments before us, appellee contended that appellant "waived" his right to exercise the privilege against self-incrimination by taking the witness stand in his own behalf. Such is not the rule in this jurisdiction.
In civil cases, a witness who discloses a fact or transaction, without invoking his privilege against self-incrimination, is deemed to have waived that privilege with respect to the particulars of such fact or transaction.International Brotherhood of Teamsters v. Hatas, 287 Ala. 344,361, 252 So.2d 7, 22. However, the witness's obligation to answer is limited to questions concerning the matter which he has already testified about rather than questions which involve other matters. And this is true, even though such other matters come within the scope of the action being tried. InternationalBrotherhood of Teamsters v. Hatas, 287 Ala. at 362,252 So.2d at 23. In the instant case appellant took the stand as a witness in his own behalf. He gave no testimony on direct examination which involved the issue of adultery. On cross-examination he was questioned for the first time about his adulterous activities and he attempted to exercise the privilege against self-incrimination. The trial court erred in refusing to permit him to exercise the privilege since appellant had not waived his right to do so by merely taking the stand in his own behalf.
Furthermore, waiver of a constitutional privilege must be voluntary. In the case before us, appellant would have been held in contempt had he refused to answer the questions asked of him by appellee's attorney after the court had ordered him to respond to those questions. A waiver of the constitutional privilege against self-incrimination secured under a threat of contempt of court cannot be termed voluntary. Lefkowitz v.Turley, supra.