This is an appeal from an adjudication of dependency.
In September 1990, the Calhoun County Department of Human Resources (DHR) filed petitions, alleging F.W.P. Jr., L.A.P., C.P., B.P. (B.F.P.), and B.P. (B.M.P.) to be dependent minor children. Following a shelter care hearing, custody of all five children was transferred to DHR, subject to the parents' having their home sprayed for ants and cleaned, after which all but the youngest of the children would be returned to the parents. Two days later, DHR filed a post-trial motion, alleging, inter alia, that the parents had been arrested and charged with child abuse in the first degree and that returning the children to parental custody was not in the children's best interests. Thereafter, the court entered an order, vesting custody of the children with DHR, and directing DHR to plan a placement of the children pending a final hearing. Ultimately, in July, the trial court entered an order, adjudicating the children to be dependent; hence, this appeal.
The parents appeal, raising three issues, namely: 1) whether the trial court's adjudication of dependency was based on clear and convincing evidence; 2) whether the trial court correctly denied the father's invocation of his Fifth Amendment rights against self-incrimination; and 3) whether the trial court erred in admitting certain evidence.
At the outset, we note that in cases such as this where the evidence is presented ore tenus, the determination of the trial court is presumed correct and will not be set aside unless it is unsupported by the evidence and therefore plainly and palpably wrong. Potter v. State Department of Human Resources,516 So.2d 711 (Ala.Civ.App. 1987). Further, in a case where evidence greatly conflicts, matters concerning dependency and custody rest peculiarly within the discretion of the trial court. Lee v. Jackson County Department of Pensions Security,470 So.2d 1294 (Ala.Civ.App. 1985).
The trial court heard extensive testimony from the parents, medical experts, and social workers detailing involvement with this family over a period of several years. The record reveals the following pertinent facts concerning these children: Doctors noted rat bites on one of the children in 1988. DHR has assisted the parents in obtaining other housing and in obtaining homemaker services, although the parents denied the need for such services, and indicated that *Page 155 
they saw nothing wrong with their housekeeping. In September 1990, and on B.M.P.'s first day home following his birth, the parents placed him on a blanket in a playpen without a mattress in the same room with the other children. The next morning, the mother discovered B.M.P. covered with ants, and sought medical attention. B.M.P. remained hospitalized for over a month, and on discharge, the medical records disclosed "several excavated linear bites on the right forehead, consistent with rat bites."
On other visits at the children's grandmother's residence, witnesses observed the children in a closed, hot room with ants and roaches crawling on them. The grandmother denied seeing ants on any of the children, although the witnesses testified that they removed the ants in the grandmother's presence.
B.F.P. was evaluated by a pediatrician and diagnosed with "failure to thrive" and "severe developmental delay." At one year of age, B.F.P. weighed thirteen pounds, could not sit by herself, could not suck a bottle, and would not reach for anything. Two other children were noted to be developmentally delayed and having difficulty with their speech patterns. Since their removal from the home, all of the children have improved and thrived. The record reflects that the parents have consistently denied any problems or the need for parenting classes or counselling, yet witnesses describe a home infested with ants and roaches and cluttered with unwashed dishes, uneaten food throughout the house, and soiled diapers under the playpen where the youngest baby slept.
The primary concern in cases involving children is the best interests of the child. Carter v. Jefferson County Departmentof Pensions Security, 496 So.2d 66 (Ala.Civ.App. 1986). Because the trial judge had the opportunity to hear the witnesses and observe their demeanor, this court will not substitute its judgment for that of the trial court, even if this court would have decided this case differently. SeeFitzgerald v. Jeter, 428 So.2d 84 (Ala.Civ.App. 1983). Based upon the foregoing, we conclude that the trial court's finding of dependency was based on clear and convincing evidence, and that it was not palpably wrong.
Next, the appellants argue that the trial court erred in denying the father's attempt to invoke his rights under the Fifth Amendment of the U.S. Constitution. The father testified that he had been diagnosed with certain stress-related problems for which he received Supplemental Security Income (SSI) payments. When asked who made the diagnosis, he attempted to invoke his Fifth Amendment rights against self-incrimination. The father could not provide any set of circumstances in which he possibly could be prosecuted by answering such a question. The trial court correctly overruled the objection and denied the invocation of the Fifth Amendment as to this question.Vail v. Vail, 360 So.2d 985 (Ala.Civ.App. 1977), reversed on other grounds, Ex parte Vail, 360 So.2d 992 (Ala. 1978).
Next, when the father was asked about the time B.M.P. was born and brought home, the father's attorney again objected, based on the privilege under the Fifth Amendment. The father had previously testified to this incident at the shelter care hearing; therefore, any such right to refuse to answer the question was waived. A witness who discloses a fact or transaction without invoking his privilege against self-incrimination is deemed to waive that privilege with respect to that fact or transaction. Vail, supra.
Lastly, the appellants argue that the trial court committed reversible error by admitting certain evidence not disclosed prior to trial, although ordered disclosed by the court's pre-trial order. It is noteworthy that the present counsel was the second attorney to represent the parents in this case. This evidence, upon order, was furnished to the first attorney, who had withdrawn from the case. Upon determining that the second counsel had not obtained the records from the first attorney or obtained the information on his own, the trial court denied the objection and admitted the records. It is well-established that rulings regarding the admissibility of evidence *Page 156 
rest largely within the discretion of the trial court and will not be disturbed on appeal in the absence of gross abuse of that discretion. Houser v. Gipson, 485 So.2d 738
(Ala.Civ.App. 1986). Under these circumstances, we find no abuse.
Based upon the foregoing, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., and RUSSELL, J., concur.