Victoria Smith and Dwight Smith were married on August 22, 1981, and separated in late February 1990. On June 5, 1990, the wife filed a complaint for divorce, alleging incompatibility and requesting custody of the parties' three minor children, who were ages 2, 6 and 8 years. On October 5, 1990, the wife filed a motion to amend her complaint to allege that the husband had committed adultery and had transmitted a sexual disease to her contracted by his *Page 1184 
adultery and to seek $200,000 as compensatory and punitive damages.
On October 23, 1990, the husband counterclaimed for divorce, alleging adultery on the part of the wife.
At the wife's deposition on October 29, 1990, she refused to answer certain questions about her sexual activity. On considering the wife's motion to amend, and the husband's motion to compel the wife's answers to certified questions by deposition, the trial court ordered the wife to resubmit to oral deposition, and that upon her assertion of her privilege against self-incrimination, her motion to amend complaint would be subject to dismissal. Upon the retaking of her deposition, the wife asserted her privilege, and, subsequently, the trial court denied her motion to amend.
Following an ore tenus proceeding, the trial court granted the husband a divorce on his counterclaim on the ground of adultery on the part of the wife and, among other things, granted custody of the three minor children to the husband. The wife appeals.
The issues raised by the wife on appeal are whether there was sufficient evidence presented to the trial court to grant a divorce on the grounds of adultery, and whether the trial court committed an abuse of discretion by injecting religious bias in awarding custody, by ordering her to pay child support, and by imposing too severe restrictions on her during visitation periods.
As to the first issue, this court has held that:
 "The act of adultery may be proven by circumstantial evidence, but more than a mere suspicion must be created. In addition, the circumstances created must be 'such as would lead the guarded discretion of a reasonable and just man to conclude that the act of adultery has been committed,' Billington v. Billington, 531 So.2d 924
(Ala.Civ.App. 1988), and 'to the conclusion of adultery as a necessary inference.' Boldon v. Boldon, 354 So.2d 275, 276 (Ala.Civ.App. 1978) quoted with approval in Maddox v. Maddox, 553 So.2d 611, 612 (Ala.Civ.App. 1989))."
Rowe v. Rowe, 575 So.2d 584, 586 (Ala.Civ.App. 1991).
The evidence before the trial court included events before and after the wife's June 5, 1990, filing of her complaint for divorce alleging incompatibility. The wife cites Hilley v.Hilley, 275 Ala. 617, 157 So.2d 215 (1963), and asserts that any evidence of adultery on the part of the wife after the filing of her complaint cannot be competent proof of adultery on which to base the granting of the divorce. In Hilley, the wife filed for divorce on the grounds of cruelty. The husband answered, and as a defense to her action, alleged that the wife had committed adultery, which would bar her from the relief of divorce due to his acts of cruelty. Our supreme court held inHilley that evidence of adultery by the wife after the date she filed her complaint for divorce is not relevant or admissible to sustain the allegation of adultery committed prior to the filing of the complaint and of which no proof has been shown. In other words, to defend against acts of cruelty committed before the complaint was filed, the husband must prove the wife's adulterous act was committed before the complaint was filed. Hilley.
However, when adultery is alleged in the complaint, incidents of adultery subsequent to the filing of the divorce petition are admissible to corroborate evidence of adultery prior to the date of filing, but the subsequent incidents cannot be the sole basis to grant the divorce. Vail v. Vail, 360 So.2d 985
(Ala.Civ.App. 1977). In Vail, adultery was alleged in the initial complaint, and in Hilley, it was alleged in an answer as a defense to the initial complaint. We find this case to be distinguishable since the counterclaim, alleging adultery on the part of the wife, was not filed until October 23, 1990, some four and one-half months after the wife's complaint alleging incompatibility was filed. Therefore, since the parties were still married, any evidence of adultery on the part of the wife up to October 23, 1990, is competent *Page 1185 
evidence for the trial court to consider. Any evidence of adultery committed after October 23, 1990, would be relevant to proving adultery only if competent proof of adultery prior to October 23, 1990, had already been shown and then only to corroborate that evidence. Hilley; Vail. Otherwise, any husband or wife could simply file a complaint for divorce, and, then, he or she would be able to openly commit adultery, and the other party would be unable to obtain a divorce by counterclaim on the grounds of adultery unless he or she had competent proof of adultery before the initial filing.
The evidence before the trial court in support of a finding of adultery on the part of the wife was as follows.
Susan Ruff, a friend of the wife's, testified that in September of 1989, the wife and the husband came to her home to eat dinner. Mrs. Ruff testified that she and the wife went for a walk after dinner and that the wife said she had met somebody new — a new man in her life, and that she was contemplating
having an affair with this man. Mrs. Ruff also testified that, after Christmas of 1989, the wife brought up Mike Barth's name often. In fact, Mrs. Ruff testified that the wife spoke of how she found Mike Barth to be attractive. Mrs. Ruff also testified as to a conversation that she and the wife had prior to September in which the wife said her biggest temptation in life was fidelity within a marriage.
The husband testified that in December of 1989, he noticed changes in his wife's behavior. He testified that often he would call home and nobody would answer the phone and, that when he called back, he would discover that his wife and children had been next door at a house being built by the wife's alleged paramour, Mike Barth. He testified that in February of 1990, the wife told him that she wanted out of the marriage and that she wanted to start over with someone else. About one week after the separation, when the husband questioned the wife about Mike Barth, she admitted that they did have a relationship. However, the wife told him that she would end the relationship because, at that time, they were seeing a marriage counselor.
The wife's relationship with Barth obviously did not end. Undisputed evidence before the trial court showed that Mike Barth was at the parties' marital residence continuously after the separation. In fact, not only did the husband testify that every time he went to the house Barth was there, but the wife also testified that Barth had been at the marital residence every day since June. Her testimony was also that Barth left the house each day sometime between 11:30 p.m. and 2:30 a.m.
Further, the wife testified that she, her children, and Mike Barth went on overnight trips together, the first one being to Joe Wheeler State Park about June the seventh or eighth. That particular weekend would have been the weekend following the week that the wife filed the divorce case against her husband. The wife also testified that she, her children, and Barth went to Lake Guntersville sometime around the fourth of July and that they all went to Gulf Shores together in September. When questioned about all of these out of town trips with Barth, the wife said that as of June she did not consider herself a married woman.
We would also point out that the wife had been diagnosed as having Condyloma, which is a sexually transmitted disease, and which was the basis for her attempt to amend the complaint. Barth testified that he went to see a physician in September of 1990 to see if he had the virus. He testified that he went to have himself checked by a doctor because he did not know how the virus was transmitted. The wife testified, however, that the doctor told her it could only be transmitted by sexual intercourse. The husband also had himself tested for the virus and was told that he did not have it.
When evidence is presented to the trial court ore tenus, its judgment will be presumed correct on appeal, unless we find that the decision is so unsupported by the evidence that it is plainly and palpably wrong. Blankenship v. Blankenship,534 So.2d 320 (Ala.Civ.App. 1989). In view of *Page 1186 
all the aforementioned record evidence concerning the wife's behavior prior to October 23, 1990, we find that the guarded discretion of a reasonable man would have necessarily concluded that adultery did occur. Billington v. Billington,531 So.2d 924 (Ala.Civ.App. 1988).
Next, the wife asserts that the trial court abused its discretion in that it improperly injected its own religious biases and morality into its determination concerning the custody of the parties' children.
At trial, counsel for the husband questioned one of the wife's neighbors, Mr. Greg Rowe, concerning his family's religious practices. The Rowes had a daughter with whom the parties' children played, and counsel for the husband contended that their religion was an appropriate inquiry for purposes of determining associations and custody. The wife testified on cross-examination that the neighbor's daughter wore an amulet, which the child told the wife was to ward off evil spirits, that the child had a crystal ball, and that she told the Smith children that there was no Jesus. Mr. Rowe, however, testified that his family called themselves Odinists, which he described as the original faith of the north European peoples and that the amulet his daughter wore was just a symbol. He further testified that Odinists study the Eddas of those peoples and tried to pass them on to others.
Counsel for the husband also inquired into the religious beliefs of the husband, who testified that he went to the Huntsville Evangelical Free Church, which he categorized as being quite similar to a Baptist church. He testified that the church was not a charismatic church, in that they did not "speak in tongues" and, further, that this was the church the children had attended prior to the parties' separation. The wife testified that she now attended church at the First Church of the Nazarene.
Although courts are not allowed to weigh "the merits of the religious tenets of the various faiths," courts may examine into the "beliefs of the parties who are seeking custody of thechild in order to insure that such beliefs do not endanger the child." Clift v. Clift, 346 So.2d 429, 435 (Ala.Civ.App. 1977) (emphasis added).
The neighbors in this case were not seeking custody of the Smith children. Thus, we find that the trial court erred in admitting evidence of their religious beliefs. However, we do not hold that the admission of such evidence amounted to reversible error because other evidence was presented to support the trial court's custody decision.
Further, we note that
 "[p]rejudice on the part of a judge is not presumed. Duncan v. Sherrill, 341 So.2d 946 (Ala. 1977). But a judge is presumed to be qualified and unbiased with the burden on the moving party to prove the contrary. Street v. Hutto, 46 Ala. App. 324, 241 So.2d 848 (1970)."
Wells v. Wells, 346 So.2d 442, 444 (Ala.Civ.App. 1977). Although the trial court's comments may have strongly reflected his conclusion that the wife committed adultery and was less than honest about her relationship with Barth, we do not find it to be so infected with error as to require the grant of a new trial.
When making a child custody determination, the court may consider any of the following: the sex and age of the children, their needs, the respective home environments offered by each parent, the characteristics of each parent, and the ability of each parent to provide for the emotional, social, moral, material, and educational needs of the children. Ex parteDevine, 398 So.2d 686 (Ala. 1981). Further, although it may not be a ground for denying custody to a parent, adultery by a parent may enter a court's decision concerning custody. Altieriv. Altieri, 528 So.2d 861 (Ala.Civ.App. 1988).
Both parents love their children. Witnesses for both the husband and the wife testified that each one would be a good parent. However, the father has a steady job. He has worked at the Boeing Company in Huntsville for two and one-half years. His boss considers him to be a very reliable person, very productive, and *Page 1187 
very truthful. The husband's boss testified that the husband's work hours are flexible and that the husband could leave work to go pick up a sick child at school. Further, the husband's brother and sister-in-law will be available to help out when needed, and the sister-in-law, who has two small children of her own, can keep the two-year old child of the parties. The only employment the wife has secured is with Barth who, according to the wife, pays her $500 a month. Her work for Barth is such that she is at construction sites. Thus, she takes her two-year old child to these construction areas.
Matters of child custody are committed to the sound discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion. Altieri. Here, we find ample evidence to support the trial court's custody determination.
The wife also argues that the trial court abused its discretion by ordering her to pay child support of $136.65 a month to the husband. The trial court, by footnote, explained this amount as being based on the wife's income and the computations on the child support guideline form prepared by the wife's attorney. We find no error here.
We do, however, find error on the trial court's part in ordering that:
 "During any period of overnight visitation with the parties' minor child or children, the Mother shall not allow any male to whom she is not married (or to whom she is not immediately related) to be in or stay in the Mother's residence." (Emphasis added.)
We understand that the trial court was attempting to protect the well-being of the children, and we appreciate that, but this would be so restrictive on the wife that she could not have any male except her husband or an immediate male relativein her home when the children were there for overnight visitation, which includes summer visitation and Christmas visitation periods. This restriction would cause her to be in violation of the divorce decree if her pastor (if male) visited, if church or social married couples visited, if male relatives not immediately related visited, or if the girls, as they get older, had male friends visit. Also, when and if the wife remarries, they (wife and new husband) would not be able to have other couples or male friends in their home during such visitation periods. We realize that the trial court probably did not intend for that provision to be so restrictive, but we must reverse that part of the divorce decree and remand for the trial court to enter a less restrictive limitation to prevent late night or overnight visits by unrelated males that would tend to protect the well-being of the three young girls.
The judgment of the trial court is due to be affirmed in part; reversed in part; and remanded with directions.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH DIRECTIONS.
RUSSELL, J., concurs.
THIGPEN, J., concurs in result.