YATES, Presiding Judge.
This case involves the custody of a minor child, K.M.A. The record indicates the following: K.M.A. was born in December 1995 to M.M.A., “the mother,” during her marriage to B.L.A., Jr. The couple divorced on June 10, 1996, in Summers County, West Virginia; however, because they testified that B.L.A., Jr., was not the biological father, the trial court entered an order stating “[t]he issue of the paternity of the child must remain for decision between the parties. This matter is bifurcated and the issue of paternity retained by the court for future decision.”
K.A. alleged that he was the biological father of the child[1] and petitioned the Circuit Court of Raleigh County, West Virginia, in October 1999 for a change of custody. He contended that the mother, upon her incarceration in federal prison, had given custody of the child to the maternal grandmother, I.F.R., without his consent. He sought custody of the child, because, he said, the child was not being properly cared for by the grandmother. In September 2000, S.M. filed a dependency complaint in the family court of Jefferson County, Alabama, seeking temporary custody of the child, alleging among other things, that the child was residing with him and the child’s adult half sister, N.F.B.; that he was N.F.B.’s uncle and adoptive father; and that the child’s parents were both incarcerated (the mother was in the federal correctional institution in Danbury, Connecticut, and the father was in a county jail in West Virginia). He requested the court to allow the child to continue residing with him and N.F.B. The court appointed an attorney to represent the mother and entered an order on November 15, 2000, that-awarded temporary custody to S.M., ordered a home study of the grandmother in West Virginia, and set the case for a hearing on March 1, 2001.
*847 In November 2000, the grandmother moved to intervene in the dependency proceeding in Alabama and to dismiss the complaint, arguing that the circuit court in West Virginia and not the circuit court in Jefferson County had jurisdiction over the child. After the court dismissed the alleged father’s petition in West Virginia, N.F.B., on November 17, 2000, petitioned for custody in Jefferson County, Alabama. She alleged that the child was dependent; that the parents were unable to discharge their parental responsibilities because of their incarceration; that the child had resided with her in Alabama since September 1999; and she requested that the child be allowed to continue living with her and S.M. in Alabama.
In December 2000, the grandmother moved for the second time to dismiss the dependency petition filed by S.M., again arguing that Alabama had no jurisdiction over the child. The court, on December 18, 2000, entered an order, stating, in part:
“After argument of counsel and second motion to dismiss filed' by [the grandmother], this court ■ finds that it does have jurisdiction to hear these cases, involving the dependency of said child even though West Virginia has retained jurisdiction regarding the issue of paternity....”
On January 30, 2001, the grandmother renewed her motion to dismiss the custody petitions, or, in the alternative, “to award custody of the child to N.F.B. with 'visitation to the maternal grandmother.” On February 1, 2001, the mother moved to dismiss the two dependency/custody petitions pending in the Alabama court. She argued, among other things, that the child had been removed from the mother’s home state of West Virginia; that she had executed a power of attorney to allow the grandmother to act on behalf of the child and that the grandmother had subsequently executed a power of attorney allowing N.F.B. to act on behalf of the child; and that pursuant to Uniform Child Custody Jurisdiction Act (“UCCJA”) and the Parental Kidnapping Prevention Act (“PKPA”), the state of West Virginia continued to have jurisdiction over the child and all related custody matters.
After , conducting a proceeding at which ore tenus evidence was presented, the court, on February 5, 2001, entered an order ratifying an agreement of S.M., N.F.B., and the grandmother, and awarded custody of the child to N.F.B. The order stated, in part:
“By agreement of the parties, [N.F.B., the grandmother, and S.M.], custody of [the child] will be awarded to [N.F.B.], with visitation being awarded to [the grandmother]. Visitation is as follows: .... ”
No postjudgment motions were filed. Both the mother and the grandmother appeal; the cases have been consolidated for purposes of this appeal. They argue that the trial court erred in “declining the motions to dismiss for lack of jurisdiction” and they cite the UCCJA as supporting authority.
Sections 30-3-20 through 30-3-44, Ala.Code 1975, Aabama’s version of the UC-CJA, was repealed effective January 1, 2000, and replaced by § 30-3B-101 et seq., the Uniform ‘Child Custody Jurisdiction and Enforcement Act (“UCCJEA”). We note that although the alleged biological father petitioned in West Virginia in October 1999 for custody of the child, that petition was dismissed by the West Virginia court on October 3, 2000; ‘ therefore, there was never an adjudication of paternity, and the 1996 divorce judgment did not make a custody determination regarding the child. Because the two subsequent dependency/custody petitions were filed in Aabama in September and November *848 2000, we review this case under the UC-CJEA. Section 30-8B-201, Ala.Code 1975, provides the following:
“(a) Except as otherwise provided in Section 30-3B-204, a court of this state has jurisdiction to make an initial custody determination only if:
“(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
“(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 30-3B-207 or 30-3B-208, and:
“a. The child and the child’s parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
“b. Substantial evidence is available in this state concerning the child’s care, protection, training, and personal relationships;
“(3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 30-3B-207 or 30-3B-208; or
“(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3).
“(b) Subsection (a) is the exclusive jurisdictional basis for making a child custody determination by a court of this state.
“(c) Physical presence of a child is not necessary or sufficient to make a child custody determination.”
Section 30-3B-204, Ala.Code 1975, addresses the issue of temporary emergency jurisdiction. It states, in part:
“(a) A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.
“(b) If there is no previous child custody determination that is entitled to be enforced under this chapter and a child custody proceeding has not been commenced in a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.”
Section 30-3B-206, Ala.Code 1975, governs simultaneous proceedings; it provides, in part:
“(a) Except as otherwise provided in Section 30-3B-204, a court of this state may not exercise its jurisdiction under this article if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this chap *849 ter, unless the proceeding has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum under Section 30-3B-207.”
The UCCJEA continues the primary purposes of the UCCJA, which are, in part:
“(1) [To avoid] jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;
“(2) [To promote] cooperation with the courts of other States to the end that a custody decree is rendered in that State which can best decide the case in the interest of the child;
“(3) [To discourage] the use of the interstate system for continuing controversies over child custody.”
See Official Comment to § 30-3B-101, Ala.Code 1975.
The following evidence was before the trial court: On February 5, 2001, a court report was submitted to the court referee who approved the current home for the child. The report stated,
“CURRENT SITUATION:
“[The child] continues to live in the home with [N.F.B., her half sister] and [S.M., the uncle/adoptive father of N.F.B.] and is doing well. [The child] attends [school] and is in kindergarten. [The child] was reported as a healthy child. [N.F.B.] reported that [the grandmother] still wants custody of [the child]. [N.F.B.] is not in agreement with [the grandmother] receiving custody of [the child], [The child] has lived in the home since [September 1999]. The home has 2 bedrooms, 1 bathroom, living room, dining room, and den. Worker visited the home and it was clean and properly furnished on the day of the visit. [N.F.B. and the child] share a room and have separate beds. [S.M.] has his own room. The physical residence of the home is suitable for [the child] to continue to live at this time.”
The mother executed a power of attorney from the Danbury Federal Correctional Institution, dated October 29, 1999, that appointed her daughter, N.F.B., to act on her behalf “with respect to the care and temporary custody” of the child. The grandmother wrote a notarized statement that transferred her temporary custody to N.F.B. on September 25, 1999, and authorized N.F.B. to seek medical care for the child and to enroll her in school.
The grandmother testified that the mother had given her temporary custody of the child before she had been incarcerated in federal prison; that she ánd the mother had agreed that N.F.B. should keep the child in Alabama, because the alleged father was seeking custody of the child in West Virginia. The grandmother stated that she was currently raising two other grandchildren; that she and the mother wanted the child back in West Virginia; and that if she became ill, she would want N.F.B.’to raise the child. She admitted that the child may have been sexually abused by paternal relatives while in her care in West Virginia and that the child had been taken to a hospital as a result of that abuse.
N.F.B. testified that she works full-time; that she performs cleaning services for a few hours per week at a school so that the child can attend the school at no cost; and that she planned to pursue studies at a local Bible college. According to N.F.B., the grandmother had asked her to raise the child because she was physically unable to care for her along with the other grandchildren who were living in her residence in West Virginia. N.F.B. also said *850 that she did not feel that it was a burden to raise the child and that, because her mother was in prison, she felt it was her responsibility to care for her half sister.
S.M. testified that he was disabled as a result of polio and that he had retired from a government job in West Virginia; he receives approximately $1,500 to $1,600 per month in benefits. He stated that he had relocated to Alabama after his divorce to be near his biological daughter and that he had reared N.F.B. from the time she was about 15 years old. He stated that he would continue to assist in caring for N.F.B. and the child.
The trial court accepted in open court the agreement between the parties that N.F.B. would be awarded custody of the child and that the grandmother would have visitation rights, including being permitted to take the child to West Virginia for four weeks in the summer. The trial court stated that because of the sexual abuse, the child was not to be placed in the care of any paternal relative. It noted that paternity had never been established and that there was no existing order of child support as to the child. The court found that, based on the evidence, the child was dependent and that the child should remain in the care of N.F.B. The trial court also ordered N.F.B. to attend parenting classes.
After thoroughly reviewing the UC-CJEA and the evidence presented in this case, we conclude that the trial court had jurisdiction to make a custody determination. We, therefore, find that the trial court did not err in denying the mother and grandmother’s motions to dismiss for lack of jurisdiction. We base our reasoning on the following factors: The child had resided in Alabama for more than six months preceding the commencement of the action. The child’s mother was incarcerated in Connecticut and was therefore unable to discharge her parental responsibilities, and there had been no adjudication of paternity. At the time of N.F.B.’s petition for custody, there was no pending action in West Virginia and that state had closed the case initially filed by the alleged biological father.
In addition, under our dependency statutes, we have held that upon finding a child “dependent,” the court may make any order of disposition necessary to protect the welfare of the child, including transferring legal custody of the child to a relative or a nonrelative. § 12-15-71(a)(3)c., Ala.Code 1975; Jones v. Webb, 524 So.2d 374 (Ala.Civ.App.1988), W.T. v. State Dep’t of Human Res., 707 So.2d 647 (Ala.Civ.App.1997)(discussion of § 12-15-71, Ala.Code 1975).
AFFIRMED.
CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result.

. On October 23, 2000, the family court in Raleigh County, West Virginia, entered an order of dismissal "due to inactivity” on the alleged father's petition. Neither K.A., the alleged biological father, or B.L.A., Jr., are parties to this appeal.