PITTMAN, Judge.
J.B. appeals from the Etowah Juvenile Court’s denial of his postjudgment motion.
C.E. (“the mother”) was married to S.E. (“the former husband”) for approximately nine years until their divorce in 1998. Following the divorce, C.E. had sexual relations with several men, including J.B. The mother gave birth to S.E.E. (“the child”) on August 2, 2002; the father’s name was listed as “unknown” on the child’s birth certificate. Around the time of the child’s birth, the mother and the former husband began cohabiting again; the couple have continued to cohabit (ostensibly in a common-law marriage) since that time. The mother, the former husband, J.B., and the child were all living in Missouri at the outset of this litigation.
In November 2002, DNA specimens were collected from the mother, J.B., and the child and genetic testing was performed on those specimens. The Kansas City Division of Child Support Enforcement received the test results on December 9, 2002; those results indicated that the former husband was not the biological father of the child and that J.B. was the biological father of the child. J.B. filed a petition to determine paternity, child custody, and child support in Missouri on December 31, 2002; however, no court in Missouri has ever issued a ruling regarding the paternity of the child. Moreover, during the pendency of this action, J.B. was accused of not having registered with the Missouri Putative Father Registry.
On December 11, 2002, A.B. (the former husband’s sister) and F.B. (A.B.’s husband), both of whom are residents of Eto-wah County, filed a petition in Etowah Juvenile Court “for change of custody by consent.” The petition was signed by A.B., F.B., and their adult son, C.B.; the child’s mother had signed the petition on December 4, 2002. In pertinent part, the petition alleged:
“5. [The mother] has a 4-month-old-daughter ... whose father is unknown. There is no father shown on the birth certificate.
“6. [The child] was born 6 weeks premature. She has several health problems, specifically Craniosynostosis, closing of premature skull tissue, and loss of hearing.
“7. [A.B.] is a master[s] degree nurse (CRNA) and is contracted with Gadsden Regional Medical Center and her husband [F.B.] is presently completing his MSN in nurse anesthesia. Both can provide the child with the medical, physical, mental, emotional and financial needs for her health and development.”
The petition also stated that the mother was a resident of Kansas City, Missouri, and that she was involved in a common-law marriage with the former husband; the petition further indicated that, based on her personal circumstances and finances, the mother believed the best interests of the child would be served by changing custody of the child to A.B. and F.B.
At the time that that petition was filed, the mother and the child were living with the former husband in Missouri. J.B. was residing and continues to reside in Mis *530 souri. The Etowah Juvenile Court issued an order declaring the child to be dependent and awarding A.B. and F.B. temporary custody of the child on December 11, 2002.[1] A.B. traveled to Missouri to pick up the child on December 14, 2002, and the child has remained with A.B. and F.B. since that time. The Missouri paternity action, which was filed by J.B. 17 days after A.B. picked up the child, has been stayed pending the resolution in Alabama of the issue of the jurisdiction of the Eto-wah Juvenile Court.
On April 7, 2003, when J.B. “discovered” the absence of the child from Missouri, he sent a letter to the Etowah Juvenile Court clerk requesting a copy of the court file in this case. Thereafter, J.B. filed a motion pursuant to Rule 60(b), Ala. R. Civ. P., for relief from the juvenile court’s order.[2] A motion to intervene was filed by the mother on June 27, 2003.' The juvenile court heard arguments by counsel on both motions on June 27, 2003; however, no testimony was taken. Following the hearing, the juvenile court granted the mother’s motion to intervene and denied J.B.’s Rule 60(b) motion. J.B. filed a timely appeal, arguing that the juvenile court erred when it denied his Rule 60(b) motion because the mother and child had been residents of Missouri at the time the juvenile court entered its December 11, 2002, custody order; therefore, he contends, the Alabama court did not have jurisdiction pursuant to § 30-3B-101 et seq., Ala.Code 1975, Alabama’s version of the Uniform Child Custody Jurisdiction and Enforcement Act (“the UCCJEA”), to enter a custody order regarding the child.
Generally, it is within the trial court’s discretion to grant or deny a Rule 60(b) motion; absent evidence of an abuse of discretion, the trial court’s decision will not be disturbed on appeal. Snead v. Snead, 874 So.2d 568 (Ala.Civ.App.2003). If, however, the juvenile court that entered the custody order in this case lacked jurisdiction to enter that order, the order is void. See Snead, 874 So.2d at 571 (citing Image Auto., Inc. v. Kelley Enters., Inc., 823 So.2d 655 (Ala.2001)).[3]
The UCCJEA sets forth the criteria for deciding which state’s courts will have jurisdiction to make a child-custody determination. Section 30-3B-201, Ala.Code 1975, provides the following:
“(a) Except as otherwise provided in Section 30-3B-204, a court of this state has jurisdiction to make an initial custody determination only if:
“(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to five in this state;
“(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is *531 the more appropriate forum under Section 30-3B-207 or 30-3-208, and:
“a. The child and the child’s parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
“b. Substantial evidence is available in this state concerning the child’s care, protection, training and personal relationships;
“(3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 30-3B-207 or 30-3B-208; or
“(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3).
“(b) Subsection (a) is the exclusive jurisdictional basis for making a child custody determination by a court of this state.
“(c) Physical presence of a child is not necessary or sufficient to make a child custody determination.”
(Emphasis added.)[4]
The record in this case clearly indicates that Missouri, not Alabama, was the home state of the child at the time of the commencement of this action. See § 30-3B-201(a)(l), Ala.Code 1975. Because Alabama was not the home state of the child, an Alabama court could not make an initial custody determination unless (1) the home state had declined to exercise jurisdiction, (2) the child and at least one parent had significant connections with the state, and (3) substantial evidence concerning the child’s care, protection, training and personal relationships were available for the Alabama court’s review. See § 30-3B-201(a)(2), Ala.Code 1975.
The juvenile court did not, however, assert jurisdiction under § 30-3B-201(a)(2). Rather, having determined that the home state of the child — -Missouri—had no related action pending at the time of this custody hearing, the juvenile court proceeded to exercise jurisdiction over the mother and the child pursuant to § 30-3B-204, Ala. Code 1975, the provision of the UCCJEA that governs temporary emergency jurisdiction of child-custody petitions. We do not agree with the juvenile court that § 30-3B-204 conferred jurisdiction in that court in this case. That code section states, in pertinent part:
“(a) A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.
“(b) If there is no previous child custody determination that is entitled to be enforced under this chapter and a child custody proceeding has not been commenced in a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203. If a child custody proceeding has not been or is not commenced in *532 a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.”
(Emphasis added.)
At the time that the juvenile court entered its custody order on December 11, 2002, no provision of the UCCJEA would have allowed that court to exercise-jurisdiction over the child. Although the UC-CJEA specifically states that the physical presence of the child is not necessary in order for a court of this state to exercise jurisdiction, the record indicates that the child was not present in the state at the time of the custody order, and, therefore, § 30-3B-204 does not apply.
A court does not have the authority to act if that court lacks subject-matter jurisdiction. “ ‘[J]urisdictional matters are of such magnitude that we take notice of them at any time and do so even ex mero motu.’ ” Singleton v. Graham, 716 So.2d 224, 225 (Ala.Civ.App.1998) (quoting Wallace v. Tee Jays Mfg. Co., 689 So.2d 210, 211 (Ala.Civ.App.1997), quoting in turn Nunn v. Baker, 518 So.2d 711, 712 (Ala.1987)). “ ‘[I]t is the duty of an appellate court to consider lack of subject matter jurisdiction ex mero motu.’ ” Singleton, 716 So.2d at 225 (quoting Ex parte Smith, 438 So.2d 766, 768 (Ala.1988)). An order entered by a trial court without jurisdiction is a nullity. Ex parte Norfolk S. Ry. Co., 816 So.2d 469, 472 (Ala.2001) (citing Ex parte Hornsby, 663 So.2d 966 (Ala.1995)).
Because we have determined that the juvenile court, at the time it entered its temporary custody order in December 2002, did not have jurisdiction under the UCCJEA to enter such a custody order,[5] that order was void. A void judgment will not support an appeal. Carter v. Hilliard, 838 So.2d 1062, 1064 (Ala.Civ.App.2002). We therefore dismiss J.B.’s appeal to this court and direct the juvenile court to set aside its void order of December 11, 2002.
APPEAL DISMISSED WITH INSTRUCTIONS TO THE JUVENILE COURT.
YATES, P.J., and CRAWLEY, THOMPSON, and MURDOCK, JJ., concur.

. An adjudication of dependency is a judicial determination that would support an appeal. See generally F.W.P. v. State Dep't of Human Res., 606 So.2d 153 (Ala.Civ.App.1992).

. Through counsel, J.B. entered a limited appearance for the purpose of filing the Rule 60(b) motion; he declined to submit himself to the jurisdiction of the Alabama courts.

.Although our review of Missouri law indicates that J.B. apparently lacks standing to challenge the child's custody arrangement in that state, our review of the Etowah Juvenile Court’s order does not necessitate consideration of J.B.'s potential standing or lack thereof.

. For a lengthy discussion of the custody and jurisdictional provisions of the UCCJEA, see generally I.F.R. v. N.F.B., 825 So.2d 845 (Ala.Civ.App.2001). For a discussion of similar provisions in the Uniform Child Custody Jurisdiction Act, the predecessor of the UCCJEA, see Krier v. Krier, 676 So.2d 1335 (Ala.Civ.App.1996).

. We do not comment on the application of § 30-3B-201(a)(l) with respect to the child since the child's move to Alabama in December 2002.