929 So.2d 1023 (2005)
J.B.
v.
F.B. and A.B.
2040448.
Court of Civil Appeals of Alabama.
November 18, 2005.
Joshua J. Lane, Anniston, for appellant.
Leon Garmon, Gadsden, for appellees.
PITTMAN, Judge.
J.B. appeals from a judgment of the Etowah Probate Court granting an adoption petition as to S.E.E., a child born on August 2, 2002. This is the second appeal to come before this court arising out of a dispute between the same parties over the custody of S.E.E. See J.B. v. A.B., 888 So.2d 528 (Ala.Civ.App.2004) ("J.B. I").
A brief factual summary will establish the procedural posture of this appeal. C.E. ("the mother") was married to S.E. ("the former husband") for approximately nine years until their divorce in 1998. Following the divorce, C.E. had sexual relations with several men, including J.B. The mother gave birth to S.E.E. ("the child") on August 2, 2002; the father's name was listed as "unknown" on the child's birth certificate.[1] Around the time of the child's *1024 birth, the mother and the former husband began cohabiting again; the couple have purportedly established a common-law marriage since that time. The mother, the former husband, J.B., and the child all live in Missouri.
On December 11, 2002, A.B. (the former husband's sister) and F.B. (A.B.'s husband), both of whom are residents of Etowah County, filed a petition in the Etowah Juvenile Court "for [a] change of custody by consent." The petition was signed by A.B., F.B., and their adult son, C.B.; the child's mother had signed the petition on December 4, 2002. The Etowah Juvenile Court issued an order declaring the child to be dependent and awarding A.B. and F.B. temporary custody of the child on December 11, 2002. A.B. traveled to Missouri to pick up the child on December 14, 2002, and the child has remained with A.B. and F.B. since that time. The results of a blood test conducted in December 2002 indicated that J.B., rather than the former husband, was the biological father of the child. J.B. filed a petition to determine paternity, child custody, and child support in Missouri on December 31, 2002.
In April 2003, after learning of the child's relocation to Alabama, J.B. filed a motion pursuant to Rule 60, Ala. R. Civ. P., requesting that the Etowah Juvenile Court vacate the custody award of the child to A.B. and F.B. That motion was denied, and J.B. appealed. On February 27, 2004, this court dismissed the appeal with instructions to the juvenile court, holding that the December 11, 2002, order awarding custody to A.B. and F.B. was void because of the juvenile court's lack of jurisdiction over the child. See J.B. I.[2]
While J.B. I was pending on appeal, J.B. also pursued the paternity, child-custody, and child-support action that he had filed in Missouri in December 2002. On October 30, 2003, the Circuit Court of Johnson County, Missouri, entered a judgment establishing J.B. as the biological father of the child. In addition, that Missouri judgment determined that that court "has personal jurisdiction over each of the parties and jurisdiction over the subject matter." However, the Missouri court specifically denied J.B.'s requests for an award of child custody and child support.
In March 2004, J.B. again filed a petition in the Missouri court requesting that that court order the return of the child to the State of Missouri and award custody of the child to J.B. pending further proceedings. However, the record reflects that in July 2004 the Missouri court set a hearing date of September 30, 2004, to hear arguments regarding a "motion for preliminary designation of home state of child." In addition, the record reflects that the Etowah Juvenile Court entered an order on September 23, 2004, specifically staying further proceedings regarding the child until a decision could be made by the Missouri court.
On August 17, 2004, F.B. and A.B. filed a petition for adoption in the Etowah Probate Court ("the probate court"). In that petition, the father's identity was not provided. The only attempt to serve the natural parents of the child was by publication in an Etowah County newspaper.
The Missouri court held a hearing regarding the home state of the child on *1025 November 24, 2004. During that hearing, A.B. recited a time line summarizing the two years of litigation surrounding the child; that time line included the filing of the Alabama adoption petition. That testimony was the first notice to J.B. of the adoption pending in Alabama.
On November 30, 2004, while specifically declining to submit to the jurisdiction of Alabama courts, J.B. filed a "notice of contest to adoption" in the probate court. In that notice, the J.B. indicated that the probate court should stay its adoption proceedings until the Missouri court could make a determination concerning the child's domicile. However, on December 22, 2004, the probate court conducted an adoption hearing at which J.B., A.B., and F.B. were represented by legal counsel. Following the hearing, on January 5, 2005, the probate court entered a final judgment granting the petition to adopt the child and denying J.B.'s contest of the adoption.
The probate court's judgment determined that J.B. had failed to file with the Alabama Putative Father Registry and had, therefore, given his irrevocable implied consent pursuant to § 26-10C-1(i), Ala.Code 1975. In addition, the probate court noted that J.B. had not established a significant parental relationship with the child to overcome the implied consent to adoption. The adoption judgment concluded that the best interests of the child would be served by granting the adoption petition, and it ordered that the child's name be changed to reflect A.B. and F.B.'s surname. Following the denial of his postjudgment motion, J.B. filed this appeal.
J.B. asserts that the probate court abused its discretion when it failed to stay the adoption proceedings until the Missouri court had made a determination regarding the child's home state. Secondarily, J.B. asserts error in the probate court's determination that he had failed to establish a significant parental relationship with the child. Finally, the father contends that the probate court improperly applied Alabama's Putative Father Registry Act, § 26-10C-1 et seq., Ala.Code 1975, to this case. We conclude that J.B.'s first contention is dispositive and mandates reversal in this case.
As discussed more completely in J.B. I, Alabama's Uniform Child Custody Jurisdiction and Enforcement Act ("the UCCJEA"), § 30-3B-101 et seq., Ala.Code 1975, sets forth the criteria for deciding which state's courts will have jurisdiction to make a child-custody determination. Except in certain exceptional circumstances not present here, § 30-3B-201(a), Ala.Code 1975, a part of the UCCJEA, provides that a court of this state has jurisdiction to make an initial custody determination only if:
"(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
"(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 30-3B-207 or 30-3B-208, and:
"a. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
"b. Substantial evidence is available in this state concerning the *1026 child's care, protection, training, and personal relationships;
"(3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 30-3B-207 or 30-3B-208; or
"(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3)."
(Emphasis added.)
In J.B. I, we determined that the home state of the child was Missouri; therefore, we held that, based upon lack of jurisdiction, the custody award made by the juvenile court was void. The pertinent facts have not changed in any material respect since that decision so as to permit a court of this state to exercise jurisdiction over the child. Moreover, the Missouri court previously had expressly exercised jurisdiction over the child when it entered its October 30, 2003, judgment declaring J.B. to be the biological father of the child and stating that it had "personal jurisdiction over each of the parties and jurisdiction over the subject matter." The record reflects the fact that the Missouri court had held a hearing to determine the home state of the child; a judgment had not been entered before the probate court purportedly granted A.B. and F.B.'s adoption petition in this case. Once again, we note that an order entered by a court without jurisdiction is a nullity. Ex parte Norfolk S. Ry. Co., 816 So.2d 469, 472 (Ala.2001) (citing Ex parte Hornsby, 663 So.2d 966 (Ala.1995)).
In addition, a portion of the Alabama Adoption Code, § 26-10A-21, Ala.Code 1975, specifies:
"If, at any time during the pendency of the adoption proceeding, it is determined that any other custody action concerning the adoptee is pending in the courts of this state or any other state or country, any party to the adoption proceeding, or the court on its own motion, may move to stay such adoption proceeding until a determination has been made by an appropriate court with jurisdiction pursuant to the provisions of the Uniform Child Custody Jurisdiction Act (UCCJA)[3] or the Parental Kidnapping Prevention Act (PKPA)."
In this case, the probate court was notified of another ongoing proceeding in the Missouri court.
In light of our holding in J.B. I regarding lack of Alabama courts' jurisdiction over the child, and in view of § 26-10A-21, Ala.Code 1975, we must conclude that the probate court did not have jurisdiction to enter a judgment of adoption because it did not have jurisdiction over the child at the time that it entered its judgment. Without jurisdiction, that judgment is void. A void judgment will not support an appeal. Carter v. Hilliard, 838 So.2d 1062, 1064 (Ala.Civ.App.2002). We therefore dismiss J.B.'s appeal to this court, but we direct the probate court to set aside its void judgment of January 5, 2005.
APPEAL DISMISSED WITH INSTRUCTIONS TO THE PROBATE COURT.
CRAWLEY, P.J., and THOMPSON, MURDOCK, and BRYAN, JJ., concur.
NOTES
[1] In March 2004, the child's birth certificate, issued by the State of Missouri, was amended to change the child's name from S.E.E. to S.M.B. and to add J.B.'s name as the father of the child.
[2] Following that decision, the Etowah Juvenile Court entered a new custody order awarding temporary custody of the child to A.B. and F.B. pending further judicial action in the matter. Apparently, no appeal from that custody order has been taken, and we do not address the validity of that order.
[3] We note that the UCCJA has been repealed and replaced by the UCCJEA. See § 30-3B-101 et seq., Ala.Code 1975.