Rel: November 7, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

_____

### CL-2025-0114

_____

### T.S.

### v.

### Houston County Department of Human Resources

### Appeal from Houston Juvenile Court
### (JU-24-451.01)

EDWARDS, Judge.

In July 2024, the Houston County Department of Human Resources ("DHR") filed in the Houston Juvenile Court ("the juvenile court") a petition seeking to have B.K. ("the child"), the child of T.S. ("the mother"), declared dependent. In its petition, DHR averred that it "ha[d] confirmed

that the mother has history with [the Florida Department of Children and Families] in Broward County, Florida[,] with the most recent being in 2019." The petition also averred that the mother and the child had been residing in a Dothan motel when DHR became involved with the family.

On July 29, 2024, the juvenile court appointed a guardian ad litem for the child and held a shelter-care hearing, at which DHR proffered that the evidence would show that the mother and the child had previously resided in Broward County, Florida, and that they had been present in Alabama for approximately one month. On July 30, 2024, after the hearing, the juvenile court entered a shelter-care order, which stated that the court was "assum[ing] emergency jurisdiction only." On September 11, 2024, the juvenile court entered an order requiring the child's guardian ad litem to contact the "Broward County [Department of Children and Families'] supervising attorney." On October 9, 2024, the juvenile court entered what it entitled an "Order on Initial Appearance," in which the juvenile court stated that the "mother resides in [Alabama] now."

2

On January 16, 2025, at what was originally scheduled to be the adjudicatory hearing on the dependency petition, the juvenile court indicated that it had concerns that the question regarding its jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("the UCCJEA"), Ala. Code 1975, § 30-3B-101 et seq., had not yet been resolved. The juvenile-court judge telephoned a court in Broward County, Florida, and spoke by telephone with a person that the juvenile-court judge identified on the record as "Judge Schulman." The juvenile-court judge reported to Judge Schulman the name and birthdate of the mother and of the child, and Judge Schulman apparently verified that no dependency, paternity, child-support, or custody case involving the child existed in Broward County. Only the juvenile-court judge's side of the conversation was recorded in the transcript; certain of the statements allegedly made by Judge Schulman were reported by the juvenile-court judge. The juvenile court entered an order continuing the trial to February 3, 2025, and entered a separate order that stated, in pertinent part, that "[t]he Court further notes that it contacted Judge [Schulman] ... on this date and confirmed that there are no cases regarding custody of [the child] in Broward County. This Court has original jurisdiction."

3

After the conclusion of the trial on February 3, 2025, the juvenile court entered a judgment determining that the child is a dependent child. On February 13, 2025, the mother timely filed both a postjudgment motion directed to that judgment and a notice of appeal, which was held in abeyance pending a ruling on her postjudgment motion. See Rule 4(a)(5), Ala. R. App. P. ("A notice of appeal filed after the entry of the judgment but before the disposition of all post-judgment motions filed pursuant to Rules 50, 52, 55, and 59, Alabama Rules of Civil Procedure, shall be held in abeyance until all post-judgment motions filed pursuant to Rules 50, 52, 55, and 59 are ruled upon ...."). The juvenile court denied the mother's postjudgment motion on February 18, 2025.

Although neither party has raised the issue of this court's jurisdiction over this appeal, this court can, and should, inquire into the issue of jurisdiction ex mero motu. M.B. v. B.B., 244 So. 3d 128, 130 (Ala. Civ. App. 2017); J.T. v. A.C., 892 So. 2d 928, 931 (Ala. Civ. App. 2004). "This court may not presume that a statutorily created court of limited jurisdiction, such as the juvenile court, had subject-matter jurisdiction." C.H. v. Lamar Cnty. Dep't of Hum. Res., 324 So. 3d 391, 394 (Ala. Civ. App. 2020). The juvenile court questioned its own jurisdiction over the

4

issue of the custody of the child under the UCCJEA, and, based on the information contained in the record, we are not satisfied that the juvenile court had such jurisdiction.

The juvenile court recognized in its shelter-care order that its initial exercise of jurisdiction over the custody of the child was "emergency" in nature. The information provided to the juvenile court indicated that the mother and the child had previously resided in Florida and that they had resided at a motel in Dothan, Alabama, for approximately one month before DHR became involved with the family. Thus, it appears that the child's home state at the time of the commencement of the dependency action was Florida. Nothing contained in the record on appeal indicates that the juvenile court was informed that a Florida court (or any other court) had entered a child-custody determination regarding the child or that a child-custody proceeding had been commenced in Florida (or in any other state). See Ala. Code 1975, § 30-3B-204(b).

Temporary emergency jurisdiction under the UCCJEA is governed by Ala. Code 1975, § 30-3B-204, which provides:

> "(a) A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to

protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.

"(b) If there is no previous child custody determination that is entitled to be enforced under [the UCCJEA] and a child custody proceeding has not been commenced in a court of a state having jurisdiction under [Ala. Code 1975, §§] 30-3B-201 through 30-3B-203, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under [§§] 30-3B-201 through 30-3B-203. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under [§§] 30-3B-201 through 30-3B-203, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.

"(c) If there is a previous child custody determination that is entitled to be enforced under [the UCCJEA], or a child custody proceeding has been commenced in a court of a state having jurisdiction under [§§] 30-3B-201 through 30-3B-203, any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under [§§] 30-3B-201 through 30-3B-203. The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires.

"(d) A court of this state which has been asked to make a child custody determination under this section, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of a state having jurisdiction under [§§] 30-3B-201 through 30-3B-203, shall immediately communicate with the other court. A court of this state which is exercising jurisdiction

6

pursuant to [§§] 30-3B-201 through 30-3B-203, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of another state under a statute similar to this section shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order."

An Alabama court facing a jurisdictional question under the UCCJEA should, and in some cases must, communicate with a court of another state that may have jurisdiction. Ala. Code 1975, § 30-3B-110. Because the juvenile court had before it no information indicating that a child-custody proceeding was pending in another state or that another state had entered a child-custody determination, nothing in § 30-3B-204(b) required that the juvenile court communicate with Judge Schulman; the juvenile court was not precluded from doing so, and the decision to do so was permissible and prudent. Once the juvenile court discovered that no child-custody proceeding was pending in Broward County, Florida, the juvenile court's shelter-care order, which was properly issued under its temporary emergency jurisdiction, "remain[ed] in effect."

7

Although the juvenile court's communication with Judge Schulman appeared to have satisfied the juvenile court that it had jurisdiction to proceed with the dependency action, the record does not support a conclusion that the juvenile court had jurisdiction under Ala. Code 1975, § 30-3B-201(a), to make an initial child-custody determination regarding the child. Before a court of this state may enter a child-custody determination other than one under § 30-3B-204, this court must have jurisdiction under one of the subsections of § 30-3B-201(a), which is the "exclusive jurisdictional basis for making a child custody determination by a court of this state." § 30-3B-201(b).

Section 30-3B-201(a) provides:

"Except as otherwise provided in [§] 30-3B-204, a court of this state has jurisdiction to make an initial child custody determination only if:

"(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

"(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise

8

jurisdiction on the ground that this state is the more appropriate forum under [Ala. Code 1975, §§] 30-3B-207 or 30-3B-208, and:

"a. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

"b. Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

"(3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under [§§] 30-3B-207 or 30-3B-208; or

"(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3)."

Based on the information contained in the record, Florida appears to be the home state of the child, and, although Broward County had no pending child-custody proceeding involving the child and had not entered a child-custody determination regarding the child, Florida's status as the home state was unchanged at the time of the commencement of the

9

dependency proceeding. Thus, the juvenile court is precluded from exercising jurisdiction under § 30-3B-201(a)(1), (a)(2), or (a)(4). The juvenile court could possibly have exercised jurisdiction under § 30-3B-201(a)(3) if Judge Schulman had "declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child...." However, the record does not contain an indication that Judge Schulman "declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child...." § 30-3B-201(a)(3). Thus, the juvenile court did not have jurisdiction to make an initial determination of custody under any of the bases provided in § 30-3B-201(a).

The only other potential ground for the juvenile court's exercise of jurisdiction would be the "ripening" of the shelter-care order into a final child-custody determination under § 30-3B-204(b). By now it is well settled that "a juvenile court exercising temporary emergency jurisdiction under § 30-3B-204 does not have jurisdiction to adjudicate dependency and award custody by virtue of the limited jurisdiction provided to it." J.D. v. Lauderdale Cnty. Dep't of Hum. Res., 121 So. 3d

381, 385 (Ala. Civ. App. 2013). However, we have explained that a child-custody determination made pursuant to a court's temporary emergency jurisdiction under § 30-3B-204 can, in certain instances, ripen into a final, as opposed to temporary, child-custody determination. See W.S. v. Houston Cnty. Dep't of Hum. Res., [Ms. CL-2023-0794, Mar. 21, 2025] ___ So. 3d ___, ___ (Ala. Civ. App. 2025). Specifically, § 30-3B-204(b) provides:

> "If there is no previous child custody determination that is entitled to be enforced under [the UCCJEA] and a child custody proceeding has not been commenced in a court of a state having jurisdiction under [Ala. Code 1975, §§] 30-3B-201 through 30-3B-203, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under [§§] 30-3B-201 through 30-3B-203. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under [§§] 30-3B-201 through 30-3B-203, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child."

As we explained in W.S., under § 30-3B-204(b), "to become a 'final determination,' the emergency order providing for that temporary disposition must provide, explicitly, that it is intended to be a final custody determination." ___ So. 3d at ___.

11

The juvenile court's shelter-care order does not explicitly state that that order was intended to be a final custody determination. Lacking such a statement, the shelter-care order could not have ripened into a final custody determination under § 30-3B-204(b). Although the shelter-care order remains in effect pursuant to § 30-3B-204(b), the juvenile court had no basis upon which to exercise initial child-custody jurisdiction to enter the dependency judgment.

Because the juvenile court did not acquire subject-matter jurisdiction under the UCCJEA (other than temporary emergency jurisdiction under § 30-3B-204, which it exercised when entering the shelter-care order), the juvenile court's dependency judgment was entered without jurisdiction and is void. See J.B. v. A.B., 888 So. 2d 528, 532 (Ala. Civ. App. 2004) (explaining that a judgment containing a child-custody determination is void if the court entering it lacked jurisdiction under the UCCJEA). Accordingly, we dismiss the appeal based on the voidness of the dependency judgment. As noted, under § 30-3B-204(b), the juvenile court's shelter-care order remains in effect until such time as a child-custody determination is entered by a Florida court or until the shelter-care order "ripens," provided that the juvenile court amends that

12

order to reflect its intent that the shelter-care order become a final custody determination upon Alabama's becoming the child's home state.

APPEAL DISMISSED.

Fridy and Bowden, JJ., concur.

Moore, P.J., concurs in the result, without opinion.

Hanson, J., dissents, with opinion.

CL-2025-0114

HANSON, Judge, dissenting.

I respectfully dissent. I believe that the Houston Juvenile Court ("the juvenile court") had subject-matter jurisdiction pursuant to Ala. Code 1975, § 30-3B-201(a), which is part of the Uniform Child Custody Jurisdiction and Enforcement Act ("the UCCJEA"), Ala. Code 1975, § 30-3B-101 et seq.

The record shows that on July 29, 2024, the Houston County Department of Human Resources ("DHR") filed a dependency petition, alleging that B.K. ("the child") was dependent and in need of care and supervision. In the petition, DHR stated:

> "a. [DHR] became involved with the family on July 26, 2024, when Adult Protective Services [('APS')] initially received a report regarding an unresponsive 19-year-old male, [B.A.], who appeared to be suffering from malnutrition. When [Emergency Medical Services] arrived, [B.A.'s] sugar level was at 30. Once APS responded to Motel 6, [two] children were located. There was a total of [seven] people residing in Motel 6 all sleeping on [one] bed. [T.S.] is the mother to [a] 14-year-old, [B.K.,] and to the 19-year-old, [B.A.]. The mother is cognitively delayed and receives a[] [Supplemental Security Income] check. [B.A.] is currently in [the Critical Care Unit] for Neglect and Pneumonia. There are also marks on the 19-year-old, but the cause of the marks is unclear at this time and may or may not be a result of abuse. [The child] also appears to be cognitively delayed but this has not been confirmed. [The child] is not currently enrolled in school and allegedly attended an online school possibly in the 8th grade.

14

[DHR] has confirmed that the mother has history in Broward County, Florida with the most recent being in 2019. [DHR] assumed custody of this child on July 26, 2024, at 5:22 p.m.

"b. The unknown father has abandoned the child by voluntarily and intentionally relinquishing custody of this child and by continuing to withhold his presence, care, love, protection and maintenance and has failed to perform the duties of a parent preceding the filing of this Petition.

"c. [DHR] has ongoing concerns about the protective capacities of the mother and the mother's ability to protect the child from dangerous or injurious situations."

An affidavit from Leslie Sasnett, a DHR social worker, was attached to the dependency petition and included the following averments:

"[B.K.] is a child in the care of [DHR];

"[DHR] became involved with the family on July 26, 2024, when Adult Protective Services [('APS')] initially received a report regarding an unresponsive 19-year-old male, [B.A.], who appeared to be suffering from malnutrition;

"When [Emergency Medical Services] arrived, [B.A.'s] sugar level was at 30;

"Once APS responded to Motel 6, [two] children were located;

"There was a total of [seven] people residing in Motel 6 all sleeping on [one] bed;

15

"[T.S.] is the mother to [a] 14-year-old, [B.K.,] and to the 19 year-old, [B.A.];

"The mother is cognitively delayed and receives a[] [Supplemental Security Income] check;

"[B.A.] is currently in [the Critical Care Unit] for neglect and pneumonia;

"There are also marks on the 19-year-old, but the cause of the marks is unclear at this time and may or may not be a result of abuse;

"[The child] also appears to be cognitively delayed but this has not been confirmed;

"[The child] is not currently enrolled in school and allegedly attended an online school possibly in the 8th grade;

"[DHR] has confirmed that the mother has history in Broward County, Florida with the most recent being in 2019;

"[DHR] assumed custody of this child on July 26, 2024 at 5:22 p.m.;

"The unknown father has abandoned the child by voluntarily and intentionally relinquishing custody of this child and by continuing to withhold his presence, care, love, protection and maintenance and has failed to perform the duties of a parent preceding the filing of this petition;

"[DHR] has ongoing concerns about the protective capacities of the mother and the mother's ability to protect the child from dangerous or injurious situations."

On July 29, 2024, the juvenile court appointed a guardian ad litem for the child. Following a hearing, the juvenile court entered a shelter-care order on July 30, 2024, transferring custody of the child to DHR. DHR asserted that the mother and her adult daughter, Bi.J., both had a history with the Department of Children and Families ("DCF") in Broward County, Florida. Bi.J.'s case in Florida involved medical neglect. DHR suggested that the mother and Bi.J. were trying to avoid DCF. The juvenile court, in compliance with § 12-15-315, Ala. Code 1975, set the matter for a permanency hearing. Before the hearing, DHR filed a report in the juvenile court recommending that the child remain in foster care with a permanency plan of returning the child to the mother after service referrals had been made.

On October 9, 2024, the juvenile court held a hearing at which the mother and the child were present. At the hearing, the juvenile court asked how long the mother had resided in Alabama, and the mother responded that she had been in Alabama for three months. The mother said that she intended on living in Alabama and that she had not had any contact with DCF in Florida. The juvenile court noted that a shelter-care hearing had been held in July and that the court had exercised

17

emergency jurisdiction. The mother stated that she had not attended that hearing because no one had told her about it. A DHR representative explained that DHR had informed the mother of the shelter-care hearing the week before when the mother had had a supervised visit with the child and that the mother also had been notified of the hearing by telephone. The mother explained that she thought the hearing was an online hearing. The DHR representative explained that a taxicab had been sent to the mother's hotel room to transport the mother to the shelter-care hearing. The juvenile noted that the mother and the child had been served. The juvenile court set the matter for a pretrial conference on December 12, 2024.

On December 12, 2024, the juvenile court held a hearing, which was a combined hearing regarding the child and N.S., the infant child of Bi.J., the mother's adult daughter. N.S. was living with the mother, the child, Bi.J., Br.J. (the mother's other adult daughter), B.A., and the mother's boyfriend. A DHR employee explained that the child was currently at a 30-bed group home in Fairfield and that she was attending school on the campus. The juvenile court set a hearing for January 16, 2025.

At the hearing on January 16, 2025, the juvenile court questioned whether it had jurisdiction. The juvenile court noted that the court had received an email from DCF indicating that there had been no "communication yet between the judges" regarding jurisdiction. The juvenile court then had a telephone conversation with Judge Schulman of the Broward County Juvenile Court ("the Florida court"). The juvenile court's portion of the conversation indicated that the Florida court stated that there were no pending cases regarding the child. The juvenile court confirmed birth dates and the correct spelling of the names of the parties involved. The juvenile court asked if Florida wanted the children (referring to the child and N.S.) back or if the juvenile court could "handle it." The juvenile court stated:

> "THE COURT: We've got the father as unknown. Do you have a father on that one? Oh so, it's not -- yeah. Got you. Okay. But no dependency? Okay. Since I have -- right. I think you're right. Perfect. That's I think how we found out about y'all, but we weren't sure about the jurisdiction issue. Perfect. She has got no case. Thank you. Thank you so much. Bye-bye. I recorded that, at least my end of it. But there are no dependency cases on either child in Broward County. She says their DCF might have been investigating the mother or the situation, but never filed anything. So, at this point, <u>Judge Schulman in Broward County said we get to keep them.</u> So, we're here today with jurisdiction."

19

(Emphasis added.)

The juvenile court also entered an order noting that the court had contacted the Florida court and that there were no pending cases against the mother in Broward County, Florida. The juvenile court stated in its order that it had "original jurisdiction."

At a hearing that began on January 16, 2025, and was continued on February 3, 2025, the juvenile court heard testimony from the mother, a DHR caseworker, and the child. On February 5, 2025, the juvenile court entered a judgment stating that, based on clear and convincing evidence, the child was dependent pursuant to § 12-15-102(8), Ala. Code 1975, because the testimony presented indicated that the mother did not have the protective capacity to provide for the child. The juvenile court noted in its judgment that there was no legal father of the child. On February 13, 2025, the mother filed a motion to alter, amend, or vacate the judgment, arguing that the judgment was against the preponderance of the evidence, that DHR had not established facts sufficient to demonstrate dependency, and that the facts showed that the mother was in a position to care for the child. On February 18, 2025, the juvenile

court denied the postjudgment motion. The mother timely filed a notice of appeal.

The UCCJEA governs subject-matter jurisdiction over child-custody actions, including actions involving allegations of dependency. See § 30-3B-102(4), Ala. Code 1975 (defining a "child custody proceeding" as "[a] proceeding in a court in which legal custody, physical custody, or visitation with respect to a child is an issue" and including within that term proceedings for "divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights, and protection from domestic violence, in which the issue may appear"); H.T. v. Cleburne Cnty. Dep't of Hum. Res., 163 So. 3d 1054, 1062 (Ala. Civ. App. 2014).

> "The UCCJEA recognizes four categories of subject-matter jurisdiction: (1) initial child-custody jurisdiction, see § 30-3B-201, Ala. Code 1975; (2) continuing, exclusive jurisdiction over a child-custody determination, see § 30-3B-202, Ala. Code 1975; (3) jurisdiction to modify another state's child-custody determination, see § 30-3B-203, Ala. Code 1975; and (4) temporary emergency jurisdiction to protect a child present in this state, see § 30-3B-204, Ala. Code 1975."

Ex parte R.B., 409 So. 3d 620, 625 (Ala. Civ. App. 2024).

Pursuant to its emergency jurisdiction, the juvenile court, in the present case, made a child-custody determination when it awarded DHR

custody of the child on July 30, 2024, to alleviate an emergency regarding the child's safety and welfare while in Alabama. See § 30-3B-204(a), Ala. Code 1975. The mother, who is cognitively delayed, and the child had been living in Florida before arriving in Alabama two weeks to a month earlier. The child's adult sibling was found in the same living quarters to be unresponsive, "cold to the touch," and possibly malnourished. At the time the juvenile court exercised its emergency jurisdiction over the child, the child was in an inappropriate living situation, residing in a hotel room with five adults and one infant and only a single bed. Although emergency jurisdiction is generally intended to be temporary and for a short period, a juvenile court may continue to exercise its authority as long as the underlying reasons for the emergency continue and a child-custody proceeding has not been commenced in a court of a state having jurisdiction under § 30-3B-201 through § 30-3B-203, Ala. Code 1975. See § 30-3B-204.

Section 30-3B-204 provides:

"(a) A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of

22

the child, is subjected to or threatened with mistreatment or abuse.

"(b) If there is no previous child custody determination that is entitled to be enforced under [the UCCJEA] and a child custody proceeding has not been commenced in a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, [Ala. Code 1975,] a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.

"(c) If there is a previous child custody determination that is entitled to be enforced under [the UCCJEA], or a child custody proceeding has been commenced in a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under Sections 30-3B-201 through 30-3B-203. The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires.

"(d) A court of this state which has been asked to make a child custody determination under this section, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, shall immediately communicate with the other court. A court of this state which is exercising jurisdiction pursuant to Sections 30-3B-201 through 30-3B-

23

203, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of another state under a statute similar to this section shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order."

A juvenile court with temporary emergency jurisdiction cannot adjudicate a child's dependency unless and until it first complies with § 30-3B-204. See G.S. v. R.L., 259 So. 3d 677, 681-82 (Ala. Civ. App. 2018) (holding that a juvenile court acted beyond its temporary emergency jurisdiction by making dependency findings when a child's grandmother notified the court that a Tennessee court might have made a child-custody determination but the juvenile court failed to contact that court to resolve the jurisdictional issue).

Generally, the purpose of a child-custody determination made pursuant to the emergency-jurisdiction provisions of § 30-3B-204 is to protect the child until the state that has jurisdiction under § 30-3B-201 through § 30-3B-203, Ala. Code 1975, enters an order. See Official Comment to § 30-3B-204. Section 30-3B-204(b) provides that an emergency custody determination may become a final custody determination if there is no existing custody determination and no

24

custody proceeding is filed in a state with jurisdiction under § 30-3B-201 through 203, if the temporary order so provides, and if Alabama becomes the child's home state.  Id.  Section 30-3B-204(c) concerns the temporary nature of the emergency order when there is a prior custody order that is entitled to enforcement under the UCCJEA or when a subsequent custody proceeding is filed in a state with jurisdiction under § 30-3B-201 through § 30-3B-203.  Id.  Under 30-3B-204(c), the emergency order remains in effect only so long as is necessary for the person who obtained the determination under § 30-3B-204(c) to present a case and obtain an order from the state with jurisdiction under § 30-3B-201 through § 30-3B-203.  That period must be specified in the order.  Section 30-3B-204(d) requires communication between the court of the state that is exercising emergency jurisdiction and the court of another state that is exercising jurisdiction under § 30-3B-201 through § 30-3B-203. The pleading rules of § 30-3B-209, Ala. Code 1975, apply, and, therefore, a person seeking a temporary emergency-custody determination is required to inform the juvenile court of any proceeding concerning the child that has been commenced elsewhere.  Id.

25

In order to determine whether the juvenile court in this case had jurisdiction to enter a child-custody determination to address the child's dependency, we need to first determine whether another state had jurisdiction under § 30-3B-201, § 30-3B-202, or § 30-3B-203. Section 30-3B-202 concerns continuing jurisdiction, and § 30-3B-203 concerns a juvenile court's jurisdiction to modify another state's child-custody determination, neither of which are applicable in this case. Accordingly, we must turn to § 30-3B-201, which sets forth four separate bases for jurisdiction: home-state jurisdiction pursuant to § 30-3B-201(a)(1); significant-connection jurisdiction pursuant to § 30-3B-201(a)(2); more-appropriate-forum jurisdiction (in which jurisdiction has been declined by all courts having home-state or significant-connection jurisdiction) pursuant § 30-3B-201(a)(3); and last-resort or default jurisdiction (in which no court of any other state would have jurisdiction) pursuant to § 30-3B-201(a)(4). See Ex parte R.B., 409 So. 3d at 625-26.

Regarding home-state jurisdiction under § 30-3B-201(a), § 30-3B-102(7), Ala. Code 1975, defines "home state," in pertinent part, as

> "[t]he state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody

26

proceeding. … A period of temporary absence of the child or any of the mentioned persons is part of the period."

Here, the child had been in Alabama for two weeks to a month before DHR became involved with the family. It was undisputed that, before residing in Alabama, the family had lived in Florida. Florida was the child's home state at the time of DHR's involvement. Cf. W.S. v. Houston Cnty. Dep't of Hum. Res., [Ms. CL-2023-0794, Mar. 21, 2023] ___ So. 3d ___ (Ala. Civ. App. 2023) (holding that neither Alabama nor Florida was the child's home state when neither parent ever lived in Alabama, there was no evidence indicating that either intended to live in Alabama, the mother testified that she had no connection to Alabama other than driving to Alabama once her labor started so that she could give birth to child in Alabama, and the dependency petition was initiated in Alabama within days of the child's birth). Because Alabama is not the child's home state, we must determine if it was permissible for the juvenile court to proceed along one of the other three pathways by exercising significant-connection, more-appropriate-forum, or last-resort jurisdiction.

27

Section 30-3B-201(a)(2) provides, in pertinent part, that if a court of another state declines to exercise jurisdiction on the ground that Alabama is the more appropriate forum <u>and</u> the child and a parent or person acting as a parent has a significant connection to Alabama <u>and</u> substantial evidence is available in Alabama concerning the care, protection, training, and personal relationships of the child, Alabama courts may exercise significant-connection jurisdiction. Here, the only connection between Alabama and the family was the family's short residency in Alabama while possibly avoiding Florida's DCF. The family's brief time in Alabama was not sufficient to confer significant-connection jurisdiction on the juvenile court. <u>Cf</u>. <u>W.S.</u>, ___ So. 3d ___ (holding that the mother and the father lacked a significant connection with Alabama when the parents' only connection with Alabama was the child's birth in Alabama while the mother was attempting to flee Florida authorities and that the child lacked a significant connection with Florida when the child had never lived in Florida and nothing indicated that substantial evidence was available in Florida regarding the child's care).

The third basis for exercising jurisdiction under § 30-3B-201(a) is applicable when a court of another state having subject-matter jurisdiction over a child declines to exercise that jurisdiction because an Alabama court is the more appropriate forum under § 30-3B-207 or § 30-3B-208, Ala. Code 1975, to determine the child's custody. See § 30-3B-201(a)(3). Here, the Florida court having home-state jurisdiction declined to exercise jurisdiction over the child. Cf. C.R.B. v. Jackson Cnty. Dep't of Hum. Res., [Ms. CL-2024-0504, Aug. 29, 2025] ___ So. 3d ___ (Ala. Civ. App. 2025) (holding that Alabama juvenile court was not a more appropriate forum under § 30-3B-201(a)(3) when there were no actions involving the children pending in any court of another state and no court of another state had declined to exercise jurisdiction). The juvenile court contacted the Florida court because Florida's DCF had been involved with the family in 2019. At a hearing, DHR suggested that the mother and Bi.J. were trying to avoid a current investigation by DCF. The family had been living outside Broward County for a year while living in north Florida. The child was taking online classes while in north Florida and had not been enrolled in school. It appears that DCF had not commenced any cases involving the family. Additionally, the Alabama juvenile court

29

was familiar with the facts underlying the pending dependency petition, including the emergency situation necessitating DHR's actions, which supports the juvenile court's being the more appropriate forum. Accordingly, I believe the juvenile court had jurisdiction pursuant to § 30-3B-201(a)(3). Had the family not had a history with DCF, then the juvenile court would not have had jurisdiction unless the provisions of § 30-3B-204 were met.

One of the purposes of the UCCJEA is to facilitate cooperation between courts in different states in issuing custody and visitation orders. Ex parte Siderius, 144 So. 3d 319 (Ala. 2013). See also In re State ex rel. M.C., 94 P.3d 1220, 1223 (Colo. App. 2004) ("[T]he UCCJEA also seeks to eliminate the simultaneous exercise of jurisdiction over custody disputes by more than one state."); In re Interests of A.A.-F., 310 Kan. 125, 136, 444 P.3d 938, 948 (2019) ("The UCCJEA's drafters prioritized the jurisdictional grounds to help assure that only one state at a time exercises jurisdiction, thus avoiding conflicting orders."); Nevares v. Adoptive Couple, 384 P.3d 213, 217 (Utah 2016) ("[T]he UCCJEA promotes a framework wherein a single state is vested with jurisdiction to make child custody determinations and a uniform set of rules to

determine which state is best positioned to adjudicate custody disputes."); In re Custody of A.C., 165 Wash. 2d 568, 574, 200 P.3d 689, 691 (2009) ("The UCCJEA arose out of a conference of states in an attempt to deal with the problems of competing jurisdictions [issuing] conflicting interstate child custody orders, forum shopping, and the drawn out and complex child custody legal proceedings often encountered by parties where multiple states are involved. ... Most states have adopted the UCCJEA in order to reduce conflicting orders regarding custody and placement of children." (citations omitted; footnote omitted)); In re NC, 294 P.3d 866, 872 (Wyo. 2013) ("The dominant objective of the [UCCJEA] is 'to eliminate the simultaneous exercise of jurisdiction over custody [determinations]'" and to provide a uniform set of rules to determine which state is best positioned to adjudicate custody disputes.).

Considering the facts and circumstances in this case, especially the juvenile court's communication with the Florida court and the purpose of the UCCJEA, I believe the juvenile court had jurisdiction to address the child's dependency; therefore, I respectfully dissent.